**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

RAYMOND P. ACKER

                Plaintiff,

vs.

COUNTY OF ERIE; TIMOTHY B. HOWARD,
Erie County Sheriff; THOMAS DIINA, as
Superintendent of the Jail Management Division
Erie County Sheriff's Department; MELISSA
MONTILEONE, RN; CAITLIN GALLMAN, RN;
CARRIE LUDWIG, NP; RITA GRAZIANO, LPN;
LYDIA TORRES, RN; DEBRA WESTFIELD, RN;
DANIELLE WILLIAMS, FMH SPEC II;
JONATHAN FRANCO, LPN; SHANNA
THOMPSON, RN; LUANN WASHER, RN;
CYNTHIA CLARK, LPN; CHERYL
KACZOROWSKI, MOA; Department of the Sheriff
Of Erie County Correctional Health Care Unit; SHC
SERVICES, INC,; and John Does 1-10

                Defendants.

**NOTICE OF REMOVAL OF**
**ACTION (28 U.S.C. §1441(b))**
**Federal Cause of Action**

TO THE CLERK OF THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK:

**PLEASE TAKE NOTICE** that, pursuant to 28 U.S.C. §§1441(b) and 1446, defendants,

COUNTY OF ERIE; TIMOTHY B. HOWARD, Erie County Sheriff; THOMAS DIINA,

as Superintendent of the Jail Management Division Erie County Sheriff's Department;

MELISSA MONTILEONE, RN; CAITLIN GALLMAN, RN; CARRIE LUDWIG, NP;

RITA GRAZIANO, LPN; LYDIA TORRES, RN; DEBRA WESTFIELD, RN;

DANIELLE WILLIAMS, FMH SPEC II; JONATHAN FRANCO, LPN; SHANNA

THOMPSON, RN; LUANN WASHER, RN; CYNTHIA CLARK, LPN; CHERYL

KACZOROWSKI, MOA; Department of the Sheriff of Erie County Correctional Health

Care Unit, hereby remove to this Court the civil action filed in the Supreme Court of the State of New York, County of Erie, as described below.

On July 5, 2022, plaintiff, RAYMOND P. ACKER, filed a civil action entitled, RAYMOND P. ACKER against COUNTY OF ERIE; TIMOTHY B. HOWARD, Erie County Sheriff; THOMAS DIINA, as Superintendent of the Jail Management Division Erie County Sheriff's Department; MELISSA MONTILEONE, RN; CAITLIN GALLMAN, RN; CARRIE LUDWIG, NP; RITA GRAZIANO, LPN; LYDIA TORRES, RN; DEBRA WESTFIELD, RN; DANIELLE WILLIAMS, FMH SPEC II; JONATHAN FRANCO, LPN; SHANNA THOMPSON, RN; LUANN WASHER, RN; CYNTHIA CLARK, LPN; CHERYL KACZOROWSKI, MOA; Department of the Sheriff of Erie County Correctional Health Care Unit, under Case Index Number 807571/2022. The individually named defendants are purported to be personnel that provided medical and mental health care identified by the Plaintiff as alleged to have been involved in the circumstances underlying this litigation.

On or about July 11, 2022, COUNTY OF ERIE; TIMOTHY B. HOWARD, Erie County Sheriff; THOMAS DIINA, as Superintendent of the Jail Management Division Erie County Sheriff's Department; MELISSA MONTILEONE, RN; CAITLIN GALLMAN, RN; CARRIE LUDWIG, NP; RITA GRAZIANO, LPN; LYDIA TORRES, RN; DEBRA WESTFIELD, RN; DANIELLE WILLIAMS, FMH SPEC II; JONATHAN FRANCO, LPN; SHANNA THOMPSON, RN; LUANN WASHER, RN; CYNTHIA CLARK, LPN; CHERYL KACZOROWSKI, MOA; Department of the Sheriff of Erie

County Correctional Health Care Unit were served with the Summons and Complaint in the above-referenced state court action. A copy of the summons and complaint in the state court action is attached hereto as **Exhibit "A"**. A copy of Defendants' answer in the state court action is attached as **Exhibit "B"**.

No further proceedings have been had in the state court action. Plaintiff's Complaint contains a cause of action pursuant to 42 U.S.C. §1983, against the COUNTY OF ERIE; TIMOTHY B. HOWARD, Erie County Sheriff; THOMAS DIINA, as Superintendent of the Jail Management Division Erie County Sheriff's Department; MELISSA MONTILEONE, RN; CAITLIN GALLMAN, RN; CARRIE LUDWIG, NP; RITA GRAZIANO, LPN; LYDIA TORRES, RN; DEBRA WESTFIELD, RN; DANIELLE WILLIAMS, FMH SPEC II; JONATHAN FRANCO, LPN; SHANNA THOMPSON, RN; LUANN WASHER, RN; CYNTHIA CLARK, LPN; CHERYL KACZOROWSKI, MOA; Department of the Sheriff of Erie County Correctional Health Care Unit alleging a "deliberate indifference to medical need" in violation of the Fourth and Fourteenth Amendments", as alleged within the Complaint.

Accordingly, this Court has original jurisdiction over the state court action under 28 U.S.C. §1331 (federal question) because it is a civil action that arises under the Constitution, laws, or treaties of the United States.

No previous application has been made for the relief requested herein.

DATED:      Buffalo, New York
            July 18, 2022

                              Respectfully submitted,

                              JEREMY C. TOTH
                              Acting Erie County Attorney and Attorney
                              for Defendants,

                              By: **/s/  ANTHONY B. TARGIA**
                              ANTHONY B. TARGIA
                              Assistant County Attorney, of Counsel
                              95 Franklin Street, Room 1634
                              Buffalo, New York 14202

TO:     Blake Zaccagnino, Esq.
        Attorneys for Plaintiff
        4819 South Park Ave.
        Hamburg, NY 14075
        (716) 648-3020

**Index of Documents**

**Filed in State Court, Prior to Removal**

Document | Date of Filing
---|---
A. Summons and Complaint | July 5, 2022
B. Answer | July 13, 2022

# EXHIBIT A

**FILED: ERIE COUNTY CLERK 07/05/2022 04:35 PM**  INDEX NO. 807571/2022

NYSCEF DOC. NO. 1  RECEIVED NYSCEF: 07/05/2022

STATE OF NEW YORK
SUPREME COURT : COUNTY OF ERIE

RAYMOND ACKER
Erie County Correctional Facility - Alden
11581 Walden Avenue
Alden, NY 14004

Plaintiff,

-vs-                                                      Summons:

COUNTY OF ERIE
Erie County Hall
95 Franklin Street
Buffalo, NY 14202

TIMOTHY B. HOWARD
in their individual
and official capacity
Erie County Sheriff
10 Delaware Avenue
Buffalo, NY 14202

THOMAS DIINA, As Superintendent
of the Jail Management Division in their individual
and official capacity
Erie County Sheriff's Department
40 Delaware Avenue
Buffalo, NY 14202

MELISSA MONTILEONE, RN
in their individual
and official capacity
10 Delaware Avenue
Buffalo, NY 14202

CAITLIN GALLMAN, RN
in their individual
and official capacity
10 Delaware Avenue
Buffalo, NY 14202

CARRIE LUDWIG, NP
in their individual
and official capacity
10 Delaware Avenue
Buffalo, NY 14202

RITA GRAZIANO, LPN
RN in their individual
and official capacity
10 Delaware Avenue
Buffalo, NY 14202

LYDIA TORRES, RN
in their individual
and official capacity
10 Delaware Avenue
Buffalo, NY 14202

DEBRA WESTFIELD, RN
in their individual
and official capacity
10 Delaware Avenue
Buffalo, NY 14202

DANIELLE WILLIAMS, FMH SPEC II
in their individual
and official capacity
10 Delaware Avenue
Buffalo, NY 14202

JONATHAN FRANCO, LPN
in their individual
and official capacity
10 Delaware Avenue
Buffalo, NY 14202

SHANNA THOMPSON, RN
in their individual
and official capacity
10 Delaware Avenue
Buffalo, NY 14202

LUANN WASHER, RN
in their individual
and official capacity
10 Delaware Avenue
Buffalo, NY 14202

CYNTHIA CLARK, LPN
in their individual
and official capacity
10 Delaware Avenue
Buffalo, NY 14202

CHERYL KACZOROWSKI, MOA
in their individual
and official capacity
10 Delaware Avenue
Buffalo, NY 14202

DEPARTMENT OF SHERIFF OF
ERIE COUNTY
CORRECTIONAL HEALTH CARE UNIT
10 Delaware Avenue
Buffalo, NY 14202

SHC SERVICES, INC.
80 State Street
Albany, NY 12207

JOHN DOES 1-10, said names being
fictitious, but intended to be the
individuals/medical professionals involved in the
within incident, those responsible for providing
medical care to the Plaintiff while he was incarcerated
including but not limited to members of the
Erie County Sheriff's Office Correctional Health Unit
and Erie County Department of Mental Health Services
responsible for providing medical care to the
Plaintiff while he was incarcerated

Defendants.

---

**TO THE ABOVE-NAMED DEFENDANTS:**

**YOU ARE HEREBY SUMMONED AND REQUIRED** to serve upon the

plaintiff's attorneys, at the address stated below, a written Answer to the attached Complaint.

If this Summons is served upon you within the State of New York by personal service you must respond within TWENTY (20) days after service, not counting the day of service. If this Summons is not personally delivered to you within the State of New York you must respond within THIRTY (30) days after service is completed, as provided by law.

If you do not respond to the attached Complaint within the applicable time limitation stated above a Judgment will be entered against you, by default, for the relief demanded in the Complaint, without further notice to you.

DATED:    July 5, 2022
          Hamburg, New York

                              SHAW & SHAW, P.C.

                              _____
                              Blake Zaccagnino
                              Attorneys for Plaintiff
                              4819 South Park Avenue
                              Hamburg, New York  14075
                              (716) 648-3020 Telephone
                              (716) 648-3730 Fax

STATE OF NEW YORK
SUPREME COURT : COUNTY OF ERIE

_____

RAYMOND ACKER
Erie County Correctional Facility - Alden
11581 Walden Avenue
Alden, NY 14004

                    Plaintiff,

        -vs-                                    **Complaint** ·

COUNTY OF ERIE
Erie County Hall
95 Franklin Street
Buffalo, NY 14202

TIMOTHY B. HOWARD
in their individual
and official capacity
Erie County Sheriff
10 Delaware Avenue
Buffalo, NY 14202

THOMAS DIINA, As Superintendent
of the Jail Management Division in their individual
and official capacity
Erie County Sheriff's Department
40 Delaware Avenue
Buffalo, NY 14202

MELISSA MONTILEONE, RN
in their individual
and official capacity
10 Delaware Avenue
Buffalo, NY 14202

CAITLIN GALLMAN, RN
in their individual
and official capacity
10 Delaware Avenue
Buffalo, NY 14202

CARRIE LUDWIG, NP
in their individual
and official capacity
10 Delaware Avenue
Buffalo, NY 14202

RITA GRAZIANO, LPN
RN in their individual
and official capacity
10 Delaware Avenue
Buffalo, NY 14202

LYDIA TORRES, RN
in their individual
and official capacity
10 Delaware Avenue
Buffalo, NY 14202

DEBRA WESTFIELD, RN
in their individual
and official capacity
10 Delaware Avenue
Buffalo, NY 14202

DANIELLE WILLIAMS, FMH SPEC II
in their individual
and official capacity
10 Delaware Avenue
Buffalo, NY 14202

JONATHAN FRANCO, LPN
in their individual
and official capacity
10 Delaware Avenue
Buffalo, NY 14202

SHANNA THOMPSON, RN
in their individual
and official capacity
10 Delaware Avenue
Buffalo, NY 14202

LUANN WASHER, RN
in their individual
and official capacity
10 Delaware Avenue
Buffalo, NY 14202

CYNTHIA CLARK, LPN
in their individual
and official capacity
10 Delaware Avenue
Buffalo, NY 14202

CHERYL KACZOROWSKI, MOA
in their individual
and official capacity
10 Delaware Avenue
Buffalo, NY 14202

DEPARTMENT OF SHERIFF OF
ERIE COUNTY
CORRECTIONAL HEALTH CARE UNIT
10 Delaware Avenue
Buffalo, NY 14202

SHC SERVICES, INC.
80 State Street
Albany, NY 12207

JOHN DOES 1-10, said names being
fictitious, but intended to be the
individuals/medical professionals involved in the
within incident, those responsible for providing
medical care to the Plaintiff while he was incarcerated
including but not limited to members of the
Erie County Sheriff's Office Correctional Health Unit
and Erie County Department of Mental Health Services
responsible for providing medical care to the
Plaintiff while he was incarcerated

Defendants.
_____

Plaintiff, by his undersigned counsel, alleges, upon personal knowledge, and upon

information and belief as to all other matters, as follows:

1.    This is an action to redress the deprivation by the defendants of the rights secured to plaintiff by the United States Constitution, New York State Constitution, and federal and state statute.

## THE PARTIES

2.    By virtue of the application of one or more of the exemptions listed in Section 1602 of Article 16 of the CPLR, the limitations and liability imposed by that Article do not apply to the cause or causes of action set forth herein.

3.    Plaintiff at all times hereinafter mentioned, was and continues to be, a resident of the County of Erie, and the State of New York. That the plaintiff is presently incarcerated at the Erie County Correctional Facility - Alden.

4.    Upon information and belief, and at all times hereinafter mentioned, the defendant COUNTY OF ERIE was and continues to be a duly organized municipal corporation authorized and existing under and by virtue of the laws of the State of New York, with offices for the transaction of business in Erie County, and, as such, is subjected and empowered to sue and be sued in the Supreme Court of the State of New York. The COUNTY OF ERIE owns, possesses, has special use of the Erie County Holding Center and Erie County Correctional Facility and is responsible for maintaining it in a safe condition and ensuring that the facilities are in compliance with all laws and regulations applicable.

5.    Upon information and belief, and at all times hereinafter mentioned, defendant TIMOTHY B. HOWARD (hereafter "Sheriff") was the Sheriff of Erie County, New York on September 15, 2021 and thereafter.

6.    Upon information and belief, and at all times hereinafter mentioned, defendant THOMAS DIINA (hereafter "defendant Diina") was and is a resident of the County of

NYSCEF DOC. NO. 1                                                                    RECEIVED NYSCEF: 07/05/202:

Erie, State of New York, and was acting in his capacity as Supervisor of the Jail Management Division of defendants County and Sheriff on September 15, 2021 and thereafter.

7.      Upon information and belief, and at all times hereinafter mentioned, defendant MELISSA MONTILEONE, RN was and is a resident of the County of Erie, State of New York, and was and continues to be an employee of defendants COUNTY OF ERIE and/or SHC SERVICES, INC and/or DEPARTMENT OF SHERIFF OF ERIE COUNTY CORRECTIONAL HEALTH CARE UNIT and/or JOHN DOES 1-10.

8.      Upon information and belief, and at all times hereinafter mentioned, defendant CAITLIN GALLMAN, RN was and is a resident of the County of Erie, State of New York, and was and continues to be an employee of defendants COUNTY OF ERIE and/or SHC SERVICES, INC and/or DEPARTMENT OF SHERIFF OF ERIE COUNTY CORRECTIONAL HEALTH CARE UNIT and/or JOHN DOES 1-10 .

9.      Upon information and belief, and at all times hereinafter mentioned, defendant CARRIE LUDWIG, NP was and is a resident of the County of Erie, State of New York, and was and continues to be an employee of defendants COUNTY OF ERIE and/or SHC SERVICES, INC and/or DEPARTMENT OF SHERIFF OF ERIE COUNTY CORRECTIONAL HEALTH CARE UNIT and/or JOHN DOES 1-10.

10.     Upon information and belief, and at all times hereinafter mentioned, defendant RITA GRAZIANO, LPN was and is a resident of the County of Erie, State of New York, and was and continues to be an employee of defendants COUNTY OF ERIE and/or SHC SERVICES, INC and/or DEPARTMENT OF SHERIFF OF ERIE COUNTY CORRECTIONAL HEALTH CARE UNIT and/or JOHN DOES 1-10.

11.     Upon information and belief, and at all times hereinafter mentioned,

defendant LYDIA TORRES, RN was and is a resident of the County of Erie, State of New York,

and was and continues to be an employee of defendants COUNTY OF ERIE and/or SHC

SERVICES, INC and/or DEPARTMENT OF SHERIFF OF ERIE COUNTY CORRECTIONAL

HEALTH CARE UNIT and/or JOHN DOES 1-10.

12.     Upon information and belief, and at all times hereinafter mentioned,

defendant DEBRA WESTFIELD, RN was and is a resident of the County of Erie, State of New

York, and was and continues to be an employee of defendants COUNTY OF ERIE and/or SHC

SERVICES, INC and/or DEPARTMENT OF SHERIFF OF ERIE COUNTY CORRECTIONAL

HEALTH CARE UNIT and/or JOHN DOES 1-10.

13.     Upon information and belief, and at all times hereinafter mentioned,

defendant DANIELLE WILLIAMS, FMH SPEC II was and is a resident of the County of Erie, State

of New York, and was and continues to be an employee of defendants COUNTY OF ERIE and/or

SHC SERVICES, INC and/or DEPARTMENT OF SHERIFF OF ERIE COUNTY

CORRECTIONAL HEALTH CARE UNIT and/or JOHN DOES 1-10.

14.     Upon information and belief, and at all times hereinafter mentioned,

defendant DANIELLE WILLIAMS, FMH SPEC II was and is a resident of the County of Erie, State

of New York, and was and continues to be an employee of defendants COUNTY OF ERIE and/or

SHC SERVICES, INC and/or DEPARTMENT OF SHERIFF OF ERIE COUNTY

CORRECTIONAL HEALTH CARE UNIT and/or JOHN DOES 1-10.

15.     Upon information and belief, and at all times hereinafter mentioned,

defendant LUANN WASHER, RN was and is a resident of the County of Erie, State of New York,

and was and continues to be an employee of defendants COUNTY OF ERIE and/or SHC

SERVICES, INC and/or DEPARTMENT OF SHERIFF OF ERIE COUNTY CORRECTIONAL HEALTH CARE UNIT and/or JOHN DOES 1-10.

16.　Upon information and belief, and at all times hereinafter mentioned, defendant SHANNA THOMPSON, RN was and is a resident of the County of Erie, State of New York, and was and continues to be an employee of defendants COUNTY OF ERIE and/or SHC SERVICES, INC and/or DEPARTMENT OF SHERIFF OF ERIE COUNTY CORRECTIONAL HEALTH CARE UNIT and/or JOHN DOES 1-10.

17.　Upon information and belief, and at all times hereinafter mentioned, defendant JONATHAN FRANCO, LPN was and is a resident of the County of Erie, State of New York, and was and continues to be an employee of defendants COUNTY OF ERIE and/or SHC SERVICES, INC and/or DEPARTMENT OF SHERIFF OF ERIE COUNTY CORRECTIONAL HEALTH CARE UNIT and/or JOHN DOES 1-10.

18.　Upon information and belief, and at all times hereinafter mentioned, defendant CYNTHIA CLARK, LPN was and is a resident of the County of Erie, State of New York, and was and continues to be an employee of defendants COUNTY OF ERIE and/or SHC SERVICES, INC and/or DEPARTMENT OF SHERIFF OF ERIE COUNTY CORRECTIONAL HEALTH CARE UNIT and/or JOHN DOES 1-10.

19.　Upon information and belief, and at all times hereinafter mentioned, defendant CHERYL KACZOROWSKI, MOA was and is a resident of the County of Erie, State of New York, and was and continues to be an employee of defendants COUNTY OF ERIE and/or SHC SERVICES, INC and/or DEPARTMENT OF SHERIFF OF ERIE COUNTY CORRECTIONAL HEALTH CARE UNIT and/or JOHN DOES 1-10.

20.     Upon information and belief, and at all times hereinafter mentioned, defendant DEPARTMENT OF SHERIFF OF ERIE COUNTY CORRECTIONAL HEALTH UNIT (hereafter "Health Unit") is a department of the defendant County, which department provides medical assistance, treatment and counseling to those incarcerated at the Erie County Correctional Facility - Alden, and which was formed and exists under the laws of the State of New York, was and continues to be a governmental subdivision of defendant County.

21.     Upon information and belief, and at all times hereinafter mentioned, SHC SERVICES, INC., the individuals/medical professionals involved in the within incident, those responsible for providing medical care to the Plaintiff while he was incarcerated, were and still are a foreign business corporation, they conducted and carried on business in the County of Erie and the State of New York, they did own, use, possess, lease or otherwise contract for the use of real property and its appurtenances thereto situated within the State of New York, they transacted business within the State of New York, and did enter into contracts to supply goods and/or services within the State of New York, their agents, servants and/or employees, appointees or designees, did commit a tortious act within the State of New York causing injury to the plaintiff as hereinafter described, and they expected or should have reasonably expected its acts to have consequences in the State of New York, and at that time said defendant did derive substantial revenue from interstate commerce.

22.     Upon information and belief, and at all times hereinafter mentioned, defendants JOHN DOES 1-10, said names being fictitious, but intended to be the individuals/medical professionals involved in the within incident, those responsible for providing medical care to the Plaintiff while he was incarcerated.

## CONDITIONS PRECEDENT

23.     That on or about September 28, 2021, the plaintiff caused defendants DIINA, HOWARD, HEALTH CARE UNIT, and the COUNTY, to be personally served with a Notice of Claim pursuant to the Laws of the State of New York relating to the allegations of the Complaint herein.

24.     That more than 30 days have passed since the service of the Notice of Claim herein, and the adjustment or payment of the claim has been neglected or refused, and the defendants have failed, declined, or otherwise refused to pay the claim herein.

25.     That the plaintiff has otherwise exhausted any and all administrative remedies relating to the action herein.

26.     This action has been commenced within 1 year and 90 days after the causes of action herein accrued.

## FACTUAL BACKGROUND:

27.     That on or about September 15, 2021 and thereafter, the plaintiff was incarcerated at the Erie County Correctional Facility - Alden.

28.     Upon information and belief, on September 15, 2021, the plaintiff was a pre-trial detainee.

29.     That the defendants were charged with the care, custody and control of said plaintiff.

30.     That upon information and belief, and at all times hereinafter mentioned, defendants were responsible for providing medical care, whether in-house or by referring said plaintiff to medical providers outside of the Correctional Facility.

NYSCEF DOC. NO. 1                                                                                                          RECEIVED NYSCEF: 07/05/202:

31.     On or about September 15, 2021, defendants provided plaintiff a topical medication and/or series of medications to treat his dermatitis and psoriasis. The medications provided to the plaintiff were not proper, and their choice of care was an improper course of treatment for him. The medications were not the proper treatment regimen to treat his serious medical conditions and needs.

32.     As a result of the topical medication and/or series of medications provided to plaintiff by the defendants, and their improper treatment regimen, the plaintiff suffered from facial rashes and burns. His injuries and symptoms included: a rash located on his face and nose that was blistering, irritated, burning, itchy, painful, and red. He had vision loss, his eyes were swollen shut, and he had scabbing over his eyes. His facial rashes were oozing and leaked into his eyes.

33.     The Plaintiff was officially diagnosed with irritant contact dermatitis, steroid induced rosacea, inflammation, an uncomfortable skin disturbance, including but not limited to erythema. Upon information and belief, the plaintiff also sustained chemical burns on his face from the improper medications provided by defendants.

34.     Upon information and belief, all of the plaintiff's diagnoses were caused by the defendants' lack of proper medical treatment (including but not limited to providing plaintiff with the wrong medications and improper treatment regimen), including but not limited to, their refusal, delay, and failure to allow the plaintiff to be seen by medical professionals having an expertise in the field of dermatitis and psoriasis outside the confines of the Correctional Facility in a timely manner.

35.     Upon information and belief, contact dermatitis is an allergic or irritant reaction that causes a painful or itchy skin rash. As the name suggests, you get contact dermatitis

NYSCEF DOC. NO. 1                                                                                     RECEIVED NYSCEF: 07/05/202:

from coming into contact with an allergen (like poison ivy) or an irritant (like a chemical). In this case, upon information and belief, the plaintiff was caused to sustain contact dermatitis as a result of the defendants' lack of proper medical treatment (including but not limited to providing plaintiff with the wrong medications and improper treatment regimen). His symptoms and injuries sustained from same are described more fully below.

36.    Upon information and belief, steroid induced rosacea refers to a condition that is triggered by the use of oral or topical corticosteroids. The condition is typically characterized by several features including: Reddish bumps, papules or pus-filled swellings across the central part of the face and around the mouth or eyes. Typically, these lesions appear in areas where the creams or lotions have been applied for long durations. Affected areas may be flaming red, covered in papules and scaly and the condition is often referred to as red face syndrome. If steroid use continues or the condition is left untreated, the skin may become atrophied and permanently damaged. In this case, upon information and belief, the plaintiff was caused to sustain steroid induced rosacea as a result of the defendants' lack of proper medical treatment (including but not limited to providing plaintiff with the wrong medications and improper treatment regimen). His symptoms and injuries sustained from same are described more fully below.

37.    Upon information and belief, erythema is a skin reaction that can be triggered by an infection or some medicines. The cause of erythema is often the result of a reaction to an infection or medicine. The symptoms include: a rash that starts as small red spots, which may become raised patches a few centimeters in size, often has patches that look like a target or "bulls-eye", with a dark red center that may have a blister or crust, surrounded by a pale pink ring and a darker outermost ring' may be slightly itchy or uncomfortable; a high temperature a headache; feeling generally unwell; raw sores inside of mouth, making it hard to eat and drink;

swollen lips covered in crusts; sores on the genitals, making it painful to pee; sore, red eyes; sensitivity to light and blurred vision; and aching joints. In this case, upon information and belief, the plaintiff was caused to sustain erythema as a result of the defendants' lack of proper medical treatment (including but not limited to providing plaintiff with the wrong medications and improper treatment regimen). His symptoms and injuries sustained from same are described more fully below.

38.     On September 15, 2021, the plaintiff submitted a sick call request to defendants. He stated he would like to see a provider for the psoriasis on his face. He was seen by MELISSA MONTILEONE, RN and CAITLIN GALLMAN, RN. It was noted that: plaintiff had skin concerns; that he had pain located on the skin areas of his cheeks, nose, temporal region, and forehead, with raised, scattered, and irritated burning papules; that the onset of his pain was the application of medications; that he reported that the alcohol content in the lotion made the above mentioned areas burn and become irritated. Plaintiff requested a higher percentage cream due to his conditions. They failed to send him to a medical professional having an expertise in the field of dermatitis and psoriasis outside the confines of the Correctional Facility to, including but not limited to, determine the proper medications and treatment course for plaintiff, immediately change his medications, and/or discontinue his medications. They moved plaintiff for further evaluation and only considered changing his treatment order as prescribed, and continued on an improper treatment course causing plaintiff injury and pain.

39.     His conditions went undiagnosed, untreated, and his symptoms and condition worsened, causing him pain and injury. MELISSA MONTILEONE, RN and CAITLIN GALLMAN, RN were deliberately indifferent to plaintiff's medical need because they chose an easier and less efficacious treatment plan. They had actual and constructive knowledge that a denial/delay of proper medical care created a risk of permanent injury, would cause needless pain, and they persisted in a

NYSCEF DOC. NO. 1

RECEIVED NYSCEF: 07/05/2022

particular course of treatment even though they knew that the treatment was causing pain and was creating a risk of permanent injury.

      40.     On September 17, 2021,the plaintiff was seen by CARRIE LUDWIG, NP, and RITA GRAZIANO, LPN. It was noted that plaintiff had a rash on his face that seemed to be getting worse. Plaintiff noted that it badly burned. It was noted that he had rashes, abrasions, lacerations, incisions, sores, lesions, scars, callouses, and contusions. The location of the prior mentioned conditions were the bridge of his nose with scabbed areas and serious drainage, and it was noted that his surrounding skin was red and irritated. His cheeks, forehead, and nose was sharply demarcated, and had red, scaly plaques. His plaques were symmetrical with the majority of the irritation noted at his mask line. Plaintiff noted that since the use of his medications it made his skin worse. He noted that his medications caused burning and an increase of his rashes and redness. New topical medications were added. They failed to send him to a medical professional having an expertise in the field of dermatitis and psoriasis outside the confines of the Correctional Facility to, including but not limited to, determine the proper medications and treatment course for plaintiff, immediately change his medications, and/or discontinue his medication. They continued on an improper treatment course causing plaintiff injury and pain.

      41.     CARRIE LUDWIG, NP, and RITA GRAZIANO, LPN were deliberately indifferent to plaintiff's medical need because they chose an easier and less efficacious treatment plan. His conditions went undiagnosed, untreated, and his symptoms and condition worsened, causing him pain and injury. They had actual and constructive knowledge that a denial/delay of proper medical care created a risk of permanent injury, would cause needless pain, and they persisted in a particular course of treatment even though they knew that the treatment was causing pain and was creating a risk of permanent injury.

42. On September 19, 2021,the plaintiff was seen by LYDIA TORRES, RN and CARRIE LUDWIG, NP. Plaintiff noted that he thought he was having an allergic reaction to his new creams. The pain was noted as constant in his facial area. It was noted that he had rashes, abrasions, lacerations, incisions, sores, lesions, scars, callouses, and contusions. The location of the prior mentioned conditions was his facial area with red raised with yellow drainage noted near the bridge of his nose, eyes, and cheeks. Yellow-crusty areas was noted on multiple areas of his face. Plaintiff reported that the affected areas on his face began to burn once he put on the new creams on his face a few days prior. He noted his face was so irritated that his mask hurt his face. Certain medications were placed on hold until further evaluation with the facility. He was given Tylenol for pain. They failed to send him to a medical professional having an expertise in the field of dermatitis and psoriasis outside the confines of the Correctional Facility to, including but not limited to, determine the proper medications and treatment course for plaintiff, immediately change his medications, and/or discontinue his medications. They continued on an improper treatment course causing plaintiff injury and pain.

43. LYDIA TORRES, RN and CARRIE LUDWIG, NP were deliberately indifferent to plaintiff's medical need because they chose an easier and less efficacious treatment plan. His conditions went undiagnosed, untreated, and his symptoms and condition worsened, causing him pain and injury. They had actual and constructive knowledge that a denial/delay of proper medical care created a risk of permanent injury, would cause needless pain, and they persisted in a particular course of treatment even though they knew that the treatment was causing pain and was creating a risk of permanent injury.

44. On September 20, 2021,the plaintiff was seen by DEBRA WESTFIELD, RN and CARRIE LUDWIG, NP. Plaintiff reported that his face was getting worse, that it was

burning, and that it was getting more red. It was noted that he had rashes, abrasions, lacerations, incisions, sores, lesions, scars, callouses, and contusions. The location of the prior mentioned conditions was facial rash red, raised with patches of dry skin, swelling around his eyes and cheeks, and that it appeared that his face was irritated along his mask lines. The plaintiff requested to go to the ER. His request was denied. Instead, they started him on a new medications. They failed to send him to a medical professional having an expertise in the field of dermatitis and psoriasis outside the confines of the Correctional Facility to, including but not limited to, determine the proper medications and treatment course for plaintiff, immediately change his medications, and/or discontinue his medications. They continued on an improper treatment course causing plaintiff injury and pain.

45.     DEBRA WESTFIELD, RN and CARRIE LUDWIG, NP were deliberately indifferent to plaintiff's medical need because they chose an easier and less efficacious treatment plan. His conditions went undiagnosed, untreated, and his symptoms and condition worsened, causing him pain and injury. They had actual and constructive knowledge that a denial/delay of proper medical care created a risk of permanent injury, would cause needless pain, and they persisted in a particular course of treatment even though they knew that the treatment was causing pain and was creating a risk of permanent injury.

46.     On September 21, 2021, the plaintiff was seen by CARRIE LUDWIG, NP and DEBRA WESTFIELD, RN. Plaintiff noted that his face was getting worse and that he wanted to go to the hospital. The duration of his pain was noted as 3 days. It was noted that he had rashes, abrasions, lacerations, incisions, sores, lesions, scars, callouses, and contusions. The location of the prior mentioned conditions was a facial rash from under his eyes to his chin, red, raised irritated skin, with yellow exudates noted to his nose and cheeks. Swelling was noted periorbitally. His eyes were

noted as watery. Plaintiff requested creams to clear his rash and they were not approved. It was noted that the plaintiff had seborrheic dermatitis/psoarsis. The plaintiff asked to be sent to the ER. They did not send him to the ER or for a consult with a specialist. Instead, they suggested another treatment course. They failed to send him to a medical professional having an expertise in the field of dermatitis and psoriasis outside the confines of the Correctional Facility to, including but not limited to, determine the proper medications and treatment course for plaintiff, immediately change his medications, and/or discontinue his medications. They continued on an improper treatment course causing plaintiff injury and pain.

47.     CARRIE LUDWIG, NP and DEBRA WESTFIELD, RN were deliberately indifferent to plaintiff's medical need because they chose an easier and less efficacious treatment plan. His conditions went undiagnosed, untreated, and his symptoms and condition worsened, causing him pain and injury. They had actual and constructive knowledge that a denial/delay of proper medical care created a risk of permanent injury, would cause needless pain, and they persisted in a particular course of treatment even though they knew that the treatment was causing pain and was creating a risk of permanent injury.

48.     On September 21, 2021, the plaintiff was seen by DANIELLE WILLIAMS, FMH SPEC II. Plaintiff was agitated and requested to be sent to the hospital. It was decided that the plaintiff should not be sent to the hospital. She failed to send him to a medical professional having an expertise in the field of dermatitis and psoriasis outside the confines of the Correctional Facility to, including but not limited to, determine the proper medications and treatment course for plaintiff, immediately change his medications, and/or discontinue his medications. They continued on an improper treatment course causing plaintiff injury and pain.

49.     DANIELLE WILLIAMS, FMH SPEC II was deliberately was indifferent to

NYSCEF DOC. NO. 1                                                    RECEIVED NYSCEF: 07/05/202:

plaintiff's medical need because they chose an easier and less efficacious treatment plan. His conditions went undiagnosed, untreated, and his symptoms and condition worsened, causing him pain and injury. She had actual and constructive knowledge that a denial/delay of proper medical care created a risk of permanent injury, would cause needless pain, and she persisted in a particular course of treatment even though she knew that the treatment was causing pain and was creating a risk of permanent injury.

50.    On September 22, 2021, the plaintiff was seen by CARRIE LUDWIG, NP and JONATHAN FRANCO, LPN. Plaintiff was refusing his medications as he felt they were making his conditions worse and causing him further injury and pain. Plaintiff was simply advised on the importance of medication compliance. They failed to send him to a medical professional having an expertise in the field of dermatitis and psoriasis outside the confines of the Correctional Facility to, including but not limited to, determine the proper medications and treatment course for plaintiff, immediately change his medications, and/or discontinue his medications. They continued on an improper treatment course causing plaintiff injury and pain.

51.    CARRIE LUDWIG, NP and JONATHAN FRANCO, LPN were deliberately indifferent to plaintiff's medical need because they chose an easier and less efficacious treatment plan. His conditions went undiagnosed, untreated, and his symptoms and condition worsened, causing him pain and injury. They had actual and constructive knowledge that a denial/delay of proper medical care created a risk of permanent injury, would cause needless pain, and they persisted in a particular course of treatment even though they knew that the treatment was causing pain and was creating a risk of permanent injury.

52.    On September 25, 2021, the Plaintiff made a sick call request. He stated that he would like to get his eye sight tested. He noted that his eyes were very blurry and that he couldn't

RECEIVED NYSCEF: 07/05/2022

seem to read very long before they start watering or become very blurry. He noted that puss from his nose was leaking into his eyes for a few days, that was related to his ongoing and recurring medical issues described herein. On September 25, 2021, in response to plaintiff's sick call, he was seen by CAITLIN GALLMAN, RN. It was noted that he had rashes, abrasions, lacerations, incisions, sores, lesions, scars, callouses, and contusions. The location of the prior mentioned conditions was facial skin surrounding his eyes that appeared to have redness with a few formed scabs on his cheeks. A provider sick call was made for further evaluation. They failed to send him to a medical professional having an expertise in the field of dermatitis and psoriasis outside the confines of the Correctional Facility to, including but not limited to, determine the proper medications and treatment course for plaintiff, immediately change his medications, and/or discontinue his medications. They continued on an improper treatment course causing plaintiff injury and pain.

53.     CAITLIN GALLMAN, RN. was deliberately indifferent to plaintiff's medical need because she chose an easier and less efficacious treatment plan. His conditions went undiagnosed, untreated, and his symptoms and condition worsened, causing him pain and injury. She had actual and constructive knowledge that a denial/delay of proper medical care created a risk of permanent injury, would cause needless pain, and she persisted in a particular course of treatment even though they knew that the treatment was causing pain and was creating a risk of permanent injury.

54.     On September 27, 2021, the plaintiff was seen by CARRIE LUDWIG, NP and RITA GRAZIANO, LPN. Plaintiff noted that he had blurry vision and watery eyes that had persisted for 4 days. It was noted that he had rashes, abrasions, lacerations, incisions, sores, lesions, scars, callouses, contusions. The location of the prior mentioned conditions was a facial rash-red, dry patches to his cheeks, chin, nose surrounding the eyes, and 2 scabbed areas to the bridge of his

nose. It was noted that plaintiff had facial rash-seborrheic dermatitis/psoriasis with blurry vision. He was educated on his medication side effects. They failed to send him to a medical professional having an expertise in the field of dermatitis and psoriasis outside the confines of the Correctional Facility to, including but not limited to, determine the proper medications and treatment course for plaintiff, immediately change his medications, and/or discontinue his medications. They continued on an improper treatment course causing plaintiff injury and pain.

55.     CARRIE LUDWIG, NP and RITA GRAZIANO, LPN were deliberately was indifferent to plaintiff's medical need because they chose an easier and less efficacious treatment plan. His conditions went undiagnosed, untreated, and his symptoms and condition worsened, causing him pain and injury. They had actual and constructive knowledge that a denial/delay of proper medical care created a risk of permanent injury, would cause needless pain, and they persisted in a particular course of treatment even though they knew that the treatment was causing pain and was creating a risk of permanent injury.

56.     On September 28, 2021, the plaintiff made a sick call request. He noted that his face was swollen and he was in pain. He was seen by LUANN WASHER, RN. She noted that his face was swollen and that his condition was reoccurring. It was noted that he had rashes, abrasions, lacerations, incisions, sores, lesions, scars, callouses, and contusions. The location of the prior mentioned conditions was his surrounding eyes, nose, and that his cheeks noted to be red with dry patches/flaky skin, and scabbing was noted on his side nose and bridge. It was noted that plaintiff had facial rash-seborrheic dermatitis/psoriasis, and blurry vision. It was noted that plaintiff asked that she schedule an appointment with the provider. It was noted that plaintiff needed to keep his hands off of his face, that he should avoid hot water to his face, and stay hydrated. They failed to send him to a medical professional having an expertise in the field of dermatitis and psoriasis

NYSCEF DOC. NO. 1 RECEIVED NYSCEF: 07/05/2022

outside the confines of the Correctional Facility to, including but not limited to, determine the proper medications and treatment course for plaintiff, immediately change his medications, and/or discontinue his medications. They continued on an improper treatment course causing plaintiff injury and pain.

57.    LUANN WASHER, RN was deliberately indifferent to plaintiff's medical need because she chose an easier and less efficacious treatment plan. His conditions went undiagnosed, untreated, and his symptoms and condition worsened, causing him pain and injury. She had actual and constructive knowledge that a denial/delay of proper medical care created a risk of permanent injury, would cause needless pain, and she persisted in a particular course of treatment even though she knew that the treatment was causing pain and was creating a risk of permanent injury.

58.    On September 30, 2021, the Plaintiff made a sick call request. He stated he was seen at a sick call on the 28th, but was never called for a follow up. He noted his face was swelled up, and his eyes were getting caked up with green puss when he slept. He was seen on September 30, 2021 and October 1, 2021, by SHANNA THOMPSON, RN, CARRIE LUDWIG, NP and LUANN WASHER, RN. It was noted he had symptomatic facial concerns. It was noted he had swelling around his eye and increased crust around his eyes in the morning. It was noted that this was a recurring problem. It was noted that he had rashes, abrasions, lacerations, incisions, sores, lesions, scars, callouses, and contusions. The location of the prior mentioned conditions was that his face was more red with patches of dry scabbed areas on his nose cheeks and about his eye brows, chin and side of face redness was noted. Plaintiff requested to go back on prior medications. No new orders for medications were made at that time. It was noted that plaintiff was educated to clean his face. It was noted if plaintiff still had concerns, and that they would discuss a dermatology consult.

NYSCEF DOC. NO. 1

RECEIVED NYSCEF: 07/05/202

They failed to send him to a medical professional having an expertise in the field of dermatitis and psoriasis outside the confines of the Correctional Facility to, including but not limited to, determine the proper medications and treatment course for plaintiff, immediately change his medications, and/or discontinue his medications. They continued on an improper treatment course causing plaintiff injury and pain.

59.    SHANNA THOMPSON, RN, CARRIE LUDWIG, NP and LUANN WASHER, RN. were deliberately was indifferent to plaintiff's medical need because they chose an easier and less efficacious treatment plan. His conditions went undiagnosed, untreated, and his symptoms and condition worsened, causing him pain and injury. They had actual and constructive knowledge that a denial/delay of proper medical care created a risk of permanent injury, would cause needless pain, and they persisted in a particular course of treatment even though they knew that the treatment was causing pain and was creating a risk of permanent injury.

60.    On October 3, 2021, the plaintiff made a sick call request. He stated he would like to know if he was scheduled to be seen by a dermatologist. He stated how long does he have to wait and to live in the pain he's been in. He complained that he had an infection in his eyes and that the delay in care was getting ridiculous. On October 5, 2021, the plaintiff was seen by LYDIA TORRES, RN, CYNTHIA CLARK, LPN   CARRIE LUDWIG, NP and CHERYL KACZOROWSKI, MOA. He reported multiple concerns regarding his face. It was noted that he was inquiring regarding when he will be seen by a dermatologist. He noted that his face had not gotten any better. It was noted that he had rashes, abrasions, lacerations, incisions, sores, lesions, scars, callouses, and contusions. The location of the prior mentioned conditions was a facial rash on his forehead, with scattered small raised patches. It was noted that his cheeks, bridges of his nose, and periocular region skin remained red, raised, dry, flaky, had yellow exudates with noted thickness and

dry skin. It was note that the bridge of his nose had 4 scabbed areas. Scabbed areas were noted on his bilateral cheeks. His chin was noted to be red, dry, with flaky skin. Plaintiff reported that the skin on his face was tight and burned. He requested a new medication. Additional medication was ordered. An outside clinic order was made. They failed to send him to a medical professional having an expertise in the field of dermatitis and psoriasis outside the confines of the Correctional Facility to, including but not limited to, determine the proper medications and treatment course for plaintiff, immediately change his medications, and/or discontinue his medications. They continued on an improper treatment course causing plaintiff injury and pain.

61.    LYDIA TORRES, RN, CYNTHIA CLARK, LPN CARRIE LUDWIG, NP and CHERYL KACZOROWSKI, MOA were deliberately indifferent to plaintiff's medical need because they had chosen an easier and less efficacious treatment plan. His conditions went undiagnosed, untreated, and his symptoms and condition worsened, causing him pain and injury. They had actual and constructive knowledge that a denial/delay of proper medical care created a risk of permanent injury, would cause needless pain, and they persisted in a particular course of treatment even though they knew that the treatment was causing pain and was creating a risk of permanent injury.

62.    On October 6, 2021, a general note was made by CHERYL KACZOROWSKI, MOA. An appointment was made with dermatology for an exacerbation of plaintiff's facial seborrheic dermatitis/psoriasis. She called WNY Dermatology. An appointment wasn't scheduled with WNY Dermatology until November 16, 2021. This delay in a higher level of care created a risk of permanent injury, and caused needless pain and injuries.

63.    On November 16, 2021, plaintiff was seen by an outside specialist at WNY Dermatology. They noted that plaintiff had a rash on his nose. They noted it was blistering, burning,

NYSCEF DOC. NO. 1                                                                RECEIVED NYSCEF: 07/05/2022

itchy, painful, and red. They noted that it was present for 2 months. He was diagnosed with irritant contact dermatitis, steroid induced rosacea, inflammation, an uncomfortable skin disturbance, including but not limited to erythema. He was instructed to discontinue all topical medications and to follow their recommended treatment of care.

### A.   AS AND FOR A SEPARATE AND DISTINCT CAUSES OF ACTION AGAINST ALL DEFENDANTS, PLAINTIFF ALLEGES UPON INFORMATION AND BELIEF:

### NEGLIGENCE:

64.     At all times hereinafter mentioned, Defendants owned, occupied, controlled, and/or had special use of the Erie County Holding Center and Erie County Correctional Facility. Defendants were responsible for Plaintiff's custody care and control.

65.     Defendants had a duty to provide for Plaintiff's safety and general well-being. They had a responsibility to provide Plaintiff with with reasonably safe conditions of confinement, that includes but is not limited to, adequate food, clothing, shelter, and medical care. They also had an obligation to address the plaintiff's serious medical and mental health needs. They acted with deliberate indifference to the plaintiff's serious medical needs for the reasons outlined herein, that include but are not limited to, their failure and refusal to provide proper medical care for plaintiff.

66.     Defendants, their agents, servants and employees, also had a duty to provide plaintiff with safe environmental conditions that did not pose serious risks to his health and safety, including an environment that did not have sufficient medical services for those incarcerated at the Correctional Facility.

67.     That as a result of the aforesaid conduct, plaintiff suffered severe and permanent injuries, has and will continue to incur medical and hospital expenses related to his care,

NYSCEF DOC. NO. 1

treatment and attempted cure of said injuries and residual effects thereof, has been and may be further subjected to the impairment of his earnings, future earnings and/or future earning capacity as a result of the injuries sustained.

      68.     That upon information and belief, the incident herein described and the resultant injuries and damages sustained were caused as a result of the negligence, carelessness, reckless and/or unlawful conduct on the part of the agents, servants and/or employees of all of the defendants herein, and breaches of the above duties of care, more particularly:

     a.     negligently, carelessly and recklessly failing to maintain and omitting to keep and maintain the Correctional Facility in a safe condition, under the circumstances;

     b.     failing to provide trained medical staff to inmates housed at the Correctional Facility;

     c.     failing to have proper care, custody and control of the plaintiff;

     d.     failing to properly and appropriately observe the plaintiff's medical condition while incarcerated;

     e.     in failing and omitting to ensure the plaintiff was provided and supplied with the necessary supervision and facilities for the prevention of the plaintiff's injuries, particularly when the defendants had actual and constructive knowledge and information regarding the plaintiff's risk for injury;

     f.     in failing to properly screen and evaluate the plaintiff for the risk of personal injury;

     g.     negligently, carelessly and failing and omitting to train employees, including, but not limited to the screening of inmates for risk of injury;

     h.     causing, allowing and permitting untrained employees, including but not limited to its supporting staff to screen inmates for risk of injury;

     i.     negligently, carelessly and recklessly failing and omitting to provide persons such as the plaintiff with any notice or warning of the lack of knowledge of the staff of the defendants;

NYSCEF DOC. NO. 1                                                    RECEIVED NYSCEF: 07/05/2022

j.    causing, allowing and permitting untrained personnel to see to the needs of plaintiff;

k.    negligently, carelessly and recklessly supervising its employees performance of their duties;

l.    failing and omitting to ensure the plaintiff was provided and supplied with the necessary medical attention;

m.    failing and omitting to have adequate and comprehensive policies, procedures and/or guidelines established and in place to prevent the lack of acceptable medical care to inmates;

n.    failing to follow those policies, procedures and/or guidelines already in place at the time of the occurrence herein;

o.    failing to meet their responsibility for the plaintiff's safety and general well being;

p.    failing to provide the plaintiff with reasonably safe conditions of confinement;

q.    failing to provide the plaintiff with adequate medical care;

r.    showing a deliberate indifference to the plaintiff's serious medical needs that constituted an unnecessary and wanton infliction of pain contrary to contemporaneous standards of decency and violated the Eighth Amendment and Fourteenth Amendments;

s.    failing and refusing to obtain and provide the plaintiff with medical care to address his serious medical needs;

t.    failing to address the plaintiff's health problems that were sufficiently imminent and sure or very likely to cause serious illness and needless suffering in the next week, month, or year;

u.    failing to provide the plaintiff with environmental conditions that did not pose serious risks to his health and safety including, but not limited to, sanitary conditions;

v.    failing to adequately identify, treat, contain, control and manage diseases, infections, and viruses, including those plaintiff was suffering from;

w.    failing to provide the plaintiff with continual observation and continuous treatment and care in order to protect him from further

risk of injury and the spread of his dermatitis and psoriasis;

x. failing to adequately administer medication;

y. failing to meet generally accepted correctional standards for the management of illnesses in correctional facilities;

z. failing to follow those policies, procedures and/or guidelines already in place at the time of the occurrence herein;

aa. failing to identify, test, treat and manage illnesses;

bb. failing to develop and implement policies and procedures to ensure adequate cleaning and maintenance of the facilities with meaningful inspections processes and documentation; and

cc. They acted with deliberate indifference to the plaintiff's serious medical needs for the reasons outlined herein, that include but are not limited to, their failure and refusal to provide proper medical care for plaintiff;

dd. They did not properly address the plaintiff's serious medical and mental health needs;

cc. that the defendants, their agents, servants and employees were otherwise negligent, careless and reckless.

69. That defendants affirmatively created the dangerous and defective condition

described herein, that included but is not limited to, providing unsafe conditions of confinement of

which the plaintiff was exposed; failing to adequately treat, prescribe or refer plaintiff's medical

health care, in failing to address his serious medical needs, and creating conditions of which the

plaintiff was exposed that posed a serious risk to his health and safety.

70. The defendants, their agents, servants and employees, also affirmatively

created the dangerous and defective condition described herein placing the individual defendants,

and JOHN DOES 1-10, in a position to cause foreseeable harm to the plaintiff, that the plaintiff

would have been spared had they used reasonable care in making their decision regarding the hiring

and retention of the aforementioned defendants JOHN DOES 1-10.

71. That the defendants, their agents, servants and employees, had actual and constructive knowledge of the plaintiff's injuries and need for treatment.

72. That the conduct of all of the defendants, their agents, servants and employees herein, amounted to more than mere negligence, and instead, amounted to deliberate indifference to the plaintiff's physical well-being.

73. That the defendants, their agents, servants and employees, provided grossly inadequate care and, in fact, took no measures to provide for plaintiff's medical treatment for an unreasonable and inordinate period of time.

74. That the negligence of the defendants, their agents, servants and employees, produced physical injury and disability to the plaintiff.

75. That as a result of the foregoing, the plaintiff has sustained general and special damages in an amount that exceeds the jurisdictional limits of all lower courts that would otherwise have jurisdiction.

## NEGLIGENT TRAINING AND SUPERVISION

76. Plaintiff repeats and restates the allegations contained in the foregoing paragraphs of this Complaint as if the same were more fully set forth herein.

77. That at all times mentioned herein the individual defendants and JOHN DOES 1-10, were employees, contractors, and agents of COUNTY OF ERIE, DEPARTMENT OF SHERIFF OF ERIE COUNTY CORRECTIONAL HEALTH CARE UNIT, and/or SHC SERVICES, INC.

78. That the defendants COUNTY OF ERIE, COUNTY OF ERIE, DEPARTMENT OF SHERIFF OF ERIE COUNTY CORRECTIONAL HEALTH CARE UNIT, and/or SHC SERVICES, INC. owed a duty to the plaintiff to ensure the competence of their

NYSCEF DOC. NO. 1                                                    RECEIVED NYSCEF: 07/05/2022

employees including the defendants JOHN DOES 1-10, individually named individuals herein, and representatives of SHC SERVICES, INC., and by using reasonable care in selecting and hiring its employees such as the defendants JOHN DOES 1-10, the individually named defendants above, and representatives of SHC SERVICES, INC., they had a further duty of care to investigate the background of its employees, and review their backgrounds, competency, temperament, and propensities outlined herein, especially in light of the particular risk or hazard that the breach of that duty imposed to the public and on inmates.

79.     That when the incompetency, temperament and propensities outlined herein of the defendant JOHN DOES 1-10, individually named individuals herein, and representatives of COUNTY OF ERIE, DEPARTMENT OF SHERIFF OF ERIE COUNTY CORRECTIONAL HEALTH CARE UNIT, and/or SHC SERVICES, INC. was known or should have been known to them, herein at the time of their hiring.

80.     That defendants COUNTY OF ERIE COUNTY OF ERIE, DEPARTMENT OF SHERIFF OF ERIE COUNTY CORRECTIONAL HEALTH CARE UNIT, and/or SHC SERVICES, INC. failed to take reasonable steps to ascertain whether or not the defendants JOHN DOES 1-10, individually named individuals herein, and representatives of SHC SERVICES, INC. were emotionally capable of performing such duties and did not have a propensity towards failing to adequately identify, treat, contain, control and manage diseases, infections, and viruses; to care for ill inmates; to treat conditions that the plaintiff was suffering from; to manage medications; to provide the plaintiff with environmental conditions that posed serious risks to his health and safety, including deficient sanitation, food storage, ventilation, and pest infestation; that were situations that they were likely to encounter or administer, and they did not administer well known standardized tests to ascertain the defendants JOHN DOES 1-10, individually named individuals herein, and

representatives of SHC SERVICES, INC.'s personalities.

81.     The Defendants COUNTY OF ERIE COUNTY OF ERIE, DEPARTMENT OF SHERIFF OF ERIE COUNTY   CORRECTIONAL HEALTH CARE UNIT, and/or SHC SERVICES, INC. failed train and supervise the defendants JOHN DOES 1-10, individually named individuals herein, and  representatives of SHC SERVICES, INC. in the needs and care of ill inmates, and to implement a policy and  system for the care of ill inmates, to adequately identify, treat, contain, control and manage diseases, infections, and viruses; to treat the conditions the plaintiff was suffering from; to manage medications;  to provide the plaintiff with environmental conditions that did not pose  serious risks to his health and safety, including providing safe sanitation, food storage, ventilation, and pest control. These systematic deficiencies amounted to a deliberate indifference to the serious medical needs of the plaintiff who was held in the custody care and control of the defendants.

82.     That the failure of defendants COUNTY OF ERIE,  DEPARTMENT OF SHERIFF OF ERIE COUNTY   CORRECTIONAL HEALTH CARE UNIT, and/or SHC SERVICES, INC. failed to investigate the  negligent training and supervision of the defendants JOHN DOES 1-10 , individually named individuals herein, and representatives of SHC SERVICES, INC., and other employees placed them in a position to commit foreseeable harm and was the proximate cause of the tortuous acts committed upon plaintiff and the damages suffered by the plaintiff on account of such acts. The defendants personal involvement in the violation of the plaintiff's rights was through their gross negligence in the supervision of defendants JOHN DOES 1-10, individually named individuals herein, and  representatives of SHC SERVICES, INC., that include the medical and security staff, whose actions and omissions led directly to the unconstitutional denial of the plaintiff's right to medical care and a safe and sanitary environment.

NYSCEF DOC. NO. 1                                                    RECEIVED NYSCEF: 07/05/2022

The defendants consistent and widespread practices led to the failure of the training and supervision of the defendants JOHN DOES 1-10 , individually named individuals herein, and representatives of SHC SERVICES, INC. In other words, the defendants deliberate indifference to training of their employees and their policies regarding that was the proximate cause of the violations outlined herein of the plaintiff's constitutional rights.

83.     The COUNTY OF ERIE, DEPARTMENT OF SHERIFF OF ERIE COUNTY CORRECTIONAL HEALTH CARE UNIT, and/or SHC SERVICES, INC. defendants made a deliberate choice from among various alternatives not to train the defendants JOHN DOES 1-10, individually named individuals herein, and representatives of SHC SERVICES, INC. Such a deliberate choice was shown in light of the duties assigned to specific officers or employees the need for more or different training was so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policy makers of the defendants can reasonably be said to have been deliberately indifferent to the plaintiff's needs. The defendants also knew with a moral certainty that the defendants JOHN DOES 1-10, individually named individuals herein, and representatives of SHC SERVICES, INC. would be required to care for inmates like the plaintiff.

84.     That by reason of the foregoing, the plaintiff suffered severe, painful, permanent, and personal injuries; was rendered sick, sore, lame and disabled, and suffered loss of enjoyment of quality of life.

## NEGLIGENT HIRING:

85.     Plaintiff repeats and restates the allegations contained in the foregoing paragraphs of this Complaint as if the same were more fully set forth herein.

86.     That on at all times mentioned herein, the defendants JOHN DOES 1-10, individually named individuals herein, and representatives of SHC SERVICES, INC. were

NYSCEF DOC. NO. 1                                                    RECEIVED NYSCEF: 07/05/2022

employees, contractors, and agents of defendants COUNTY OF ERIE, DEPARTMENT OF SHERIFF OF ERIE COUNTY CORRECTIONAL HEALTH CARE UNIT, and/or SHC SERVICES, INC.

87.     That the defendants COUNTY OF ERIE, DEPARTMENT OF SHERIFF OF ERIE COUNTY CORRECTIONAL HEALTH CARE UNIT, and/or SHC SERVICES, INC. owed a duty to the plaintiff to ensure the competence of their employees including the defendants JOHN DOES 1-10, individually named individuals herein, and representatives of SHC SERVICES, INC., and by using reasonable care in selecting and hiring its employees such as the defendants JOHN DOES 1-10, individually named individuals herein, and representatives of SHC SERVICES, INC.; they had a further duty of care to investigate the background of its employees, and review their backgrounds, competency, temperament, and propensity towards failing to adequately identify, treat, contain, control and manage diseases, infections, and viruses; to care for ill inmates; to treat conditions the plaintiff was suffering from; to manage medications; to provide the plaintiff with environmental conditions that posed serious risks to his health and safety, including deficient sanitation, food storage, ventilation, and pest infestation; that were situations that they were likely to encounter or administer, and their failure to implement well known standardized tests to ascertain the defendants JOHN DOES 1-10, individually named individuals herein, and representatives of SHC SERVICES, INC. personalities, especially in light of the particular risk or hazard that the breach of that duty imposed to the public and on inmates.

88.     That the incompetency, temperament, and propensity mentioned above of the defendants JOHN DOES 1-10, individually named individuals herein, and representatives of SHC SERVICES, INC. was known or should have been known to the COUNTY OF ERIE, DEPARTMENT OF SHERIFF OF ERIE COUNTY CORRECTIONAL HEALTH CARE UNIT,

NYSCEF DOC. NO. 1                                                    RECEIVED NYSCEF: 07/05/2022

and/or SHC SERVICES, INC. at the time of their hiring.

89.    That defendants COUNTY OF ERIE,  DEPARTMENT OF SHERIFF OF

ERIE COUNTY  CORRECTIONAL HEALTH CARE UNIT, and/or SHC SERVICES, INC.

failed to take reasonable steps to ascertain whether or not the defendants JOHN DOES 1-10,

individually named individuals herein, and representatives of  SHC SERVICES, INC. were

emotionally capable of performing such duties and did not have the propensities mentioned above,

and that they would be put into situations that they were likely to encounter or administer, or well

known standardized tests to ascertain the defendants'  JOHN DOES 1-10, individually named

individuals herein, and representatives of SHC SERVICES, INC. personalities.

90.    That the failure of defendants COUNTY OF ERIE,  DEPARTMENT OF

SHERIFF OF ERIE COUNTY   CORRECTIONAL HEALTH CARE UNIT, and/or SHC

SERVICES, INC. failed in their duty to investigate the negligent hiring and retention  and

supervision of the defendants  JOHN DOES 1-10, individually named individuals herein,

representatives of  SHC SERVICES, INC.,  and other employees placed them in a position to

commit foreseeable harm was the proximate cause of the tortuous acts committed upon plaintiff and

the damages suffered by the plaintiff on account of such acts; they breached their duty to use

reasonable care in employment, training and supervision of its employees to find out whether they

were competent to do their work without danger of harm to others; they failed in their duty because

they knew or should have known that their employees, defendants JOHN DOES 1-10, individually

named individuals herein, and representatives of SHC SERVICES, INC., were incompetent and/or

had vicious propensities; a bad disposition; and/or were given to horseplay; and they failed to use

reasonable care to correct or remove them; and they failed in that duty because they knew of facts

that would lead a reasonably prudent person to conduct an investigation which could have uncovered

the information about the employee and failed to do so; they placed the defendant JOHN DOES 1-10, individually named individuals herein, and representatives of SHC SERVICES, INC. in a position to cause the foreseeable harm to the plaintiff that would most probably would have been spared had they use reasonable care in making its decision regarding the hiring and retention of them.

91.     That by reason of the foregoing, the plaintiff suffered severe, painful, permanent, and personal injuries; was rendered sick, sore, lame and disabled, and suffered loss of enjoyment of quality of life.

## NEGLIGENT RETENTION:

92.     Plaintiff repeats and restates the allegations contained in the foregoing paragraphs of this Complaint as if the same were more fully set forth herein.

93.     That at all times mentioned herein, the defendants JOHN DOES 1-10, individually named individuals herein, and representatives of SHC SERVICES, INC. were employees, contractors, and agents of defendants COUNTY OF ERIE, DEPARTMENT OF SHERIFF OF ERIE COUNTY CORRECTIONAL HEALTH CARE UNIT, and/or SHC SERVICES, INC.

94.     That the defendants COUNTY OF ERIE, DEPARTMENT OF SHERIFF OF ERIE COUNTY CORRECTIONAL HEALTH CARE UNIT, and/or SHC SERVICES, INC. owed a duty to the plaintiff to ensure the competence of their employees including the defendants JOHN DOES 1-10, individually named individuals herein, and representatives of SHC SERVICES, INC., and by using reasonable care in selecting and hiring its employees such as the defendants JOHN DOES 1-10, individually named individuals herein, and representatives of SHC SERVICES, INC.; they had a further duty of care to investigate the background of its employees, and review their backgrounds, competency, temperament, and propensities mentioned above, especially in light of

NYSCEF DOC. NO. 1                                                    RECEIVED NYSCEF: 07/05/2022

the particular risk or hazard that the breach of that duty imposed to the public and on inmates.

95.     That the incompetency, temperament, and propensities mentioned above of the defendants JOHN DOES 1-10, individually named individuals herein, and representatives of SHC SERVICES, INC. was known or should have been known to the defendants at the time of their hiring, training, retention, and supervision.

96.     That the failure of defendants COUNTY OF ERIE, DEPARTMENT OF SHERIFF OF ERIE COUNTY CORRECTIONAL HEALTH CARE UNIT, and/or SHC SERVICES, INC. failed to investigate the negligent hiring and retention and supervision of the defendants JOHN DOES 1-10, individually named individuals herein, representatives of SHC SERVICES, INC., and other employees placed them in a position to commit foreseeable harm and was the proximate cause of the tortuous acts committed upon plaintiff and the damaged suffered by the plaintiff on account of such acts; they breached their duty to use reasonable care to in employment, training and supervision of its employees to find out whether they were competent to do their work without danger of harm to others; they failed in their duty because they knew or should have known that their employees were incompetent and/or had vicious propensities; a bad disposition; and/or were given to horseplay; and they failed to use reasonable care to correct or remove them; and they failed in that duty because they knew of facts that would lead a reasonably prudent person to conduct an investigation which could have uncovered the information about the employee and failed to do so; they placed the defendant JOHN DOES 1-10, individually named individuals herein, and representatives of SHC SERVICES, INC. in a position to cause the foreseeable harm to the plaintiff that would most probably would have been spared had they use reasonable care in making its decision regarding the hiring and retention of them.

97.     That when the incompetency, temperament and propensities outlined herein

of the defendant JOHN DOES 1-10, individually named individuals herein, and representatives of

SHC SERVICES, INC. was known or should have been known to the defendants COUNTY OF

ERIE, DEPARTMENT OF SHERIFF OF ERIE COUNTY CORRECTIONAL HEALTH CARE

UNIT, and/or SHC SERVICES, INC., herein, they continued to be employed by them.

      98.     That by reason of the foregoing, the plaintiff suffered severe, painful,

permanent, and personal injuries; was rendered sick, sore, lame and disabled, and suffered loss of

enjoyment of quality of life.

### B.    VIOLATION OF FEDERAL CIVIL RIGHTS MUNICIPAL LIABILITY: 42 U.S.C. § 1983:

### INDIVIDUALLY NAMED DEFENDANTS:

      99.     Plaintiff repeats and restates the allegations contained in the foregoing

paragraphs of this Complaint as if the same were more fully set forth herein.

      100.    That on or about September 15, 2021 and thereafter, the plaintiff was

incarcerated at the Erie County Correctional Facility - Alden.

      101.    Upon information and belief, on September 15, 2021, the plaintiff was a pre-

trial detainee.

      102.    That the defendants were charged with the care, custody and control of said

plaintiff.

      103.    That upon information and belief, and at all times hereinafter mentioned,

defendants were responsible for providing medical care, whether in-house or by referring said

plaintiff to medical providers outside of the Correctional Facility.

      104.    On or about September 15, 2021, defendants provided plaintiff a topical

medication and/or series of medications to treat his dermatitis and psoriasis. The medications

provided to the plaintiff were not proper, and their choice of care was an improper course of

NYSCEF DOC. NO. 1

treatment for him. The medications were not the proper treatment regimen to treat his serious medical conditions and needs.

105.   As a result of the topical medication and/or series of medications provided to plaintiff by the defendants, and their improper treatment regimen, the plaintiff suffered from facial rashes and burns. His injuries and symptoms included: a rash located on his face and nose that was blistering, irritated, burning, itchy, painful, and red. He had vision loss, his eyes were swollen shut, and he had scabbing over his eyes. His facial rashes were oozing and leaked into his eyes.

106.   The Plaintiff was officially diagnosed with irritant contact dermatitis, steroid induced rosacea, inflammation, an uncomfortable skin disturbance, including but not limited to erythema. Upon information and belief, the plaintiff also sustained chemical burns on his face from the improper medications provided by defendants.

107.   Upon information and belief, all of the plaintiff's diagnoses were caused by the defendants' lack of proper medical treatment (including but not limited to providing plaintiff with the wrong medications and improper treatment regimen), including but not limited to, their refusal, delay, and failure to allow the plaintiff to be seen by medical professionals having an expertise in the field of dermatitis and psoriasis outside the confines of the Correctional Facility in a timely manner.

108.   Upon information and belief, contact dermatitis is an allergic or irritant reaction that causes a painful or itchy skin rash. As the name suggests, you get contact dermatitis from coming into contact with an allergen (like poison ivy) or an irritant (like a chemical). In this case, upon information and belief, the plaintiff was caused to sustain contact dermatitis as a result of the defendants' lack of proper medical treatment (including but not limited to providing plaintiff

NYSCEF DOC. NO. 1                                                                    RECEIVED NYSCEF: 07/05/2022

with the wrong medications and improper treatment regimen). His symptoms and injuries sustained from same are described more fully below.

109.    Upon information and belief, steroid induced rosacea  refers to a condition that is triggered by the use of oral or topical corticosteroids. The condition is typically characterized by several features including: Reddish bumps, papules or pus-filled swellings across the central part of the face and around the mouth or eyes. Typically, these lesions appear in areas where the creams or lotions have been applied for long durations. Affected areas may be flaming red, covered in papules and scaly and the condition is often referred to as red face syndrome. If steroid use continues or the condition is left untreated, the skin may become atrophied and permanently damaged. In this case, upon information and belief, the plaintiff was caused to sustain steroid induced rosacea as a result of the defendants' lack of proper medical treatment (including but not limited to providing plaintiff with the wrong medications and improper treatment regimen). His symptoms and injuries sustained from same are described more fully below.

110.    Upon information and belief, erythema  is a skin reaction that can be triggered by an infection or some medicines. The cause of erythema is often  the result of a reaction to an infection or medicine. The symptoms include: a rash that starts as small red spots, which may become raised patches a few centimeters in size, often has patches that look like a target or "bulls-eye", with a dark red center that may have a blister or crust, surrounded by a pale pink ring and a darker outermost ring' may be slightly itchy or uncomfortable; a high temperature a headache; feeling generally unwell; raw sores inside of  mouth, making it hard to eat and drink; swollen lips covered in crusts; sores on the genitals, making it painful to pee; sore, red eyes; sensitivity to light and blurred vision; and aching joints. In this case, upon information and belief, the plaintiff was caused to sustain erythema as a result of the defendants' lack of proper medical treatment (including

but not limited to providing plaintiff with the wrong medications and improper treatment regimen).
His symptoms and injuries sustained from same are described more fully below.

111.    On September 15, 2021,the plaintiff submitted a sick call request to
defendants. He stated he would like to see a provider for the psoriasis on his face.  He was seen by
MELISSA MONTILEONE, RN and CAITLIN GALLMAN, RN. It was noted that: plaintiff had
skin concerns; that he had pain located on the skin areas of his cheeks, nose, temporal region, and
forehead, with raised, scattered, and irritated burning papules; that the onset of his pain was the
application of medications; that he reported that the alcohol content in the lotion made the above
mentioned areas burn and become irritated. Plaintiff requested a higher percentage cream due to his
conditions. They failed to send him to a medical professional having an expertise in the field of
dermatitis and psoriasis outside the confines of the Correctional Facility to, including but not limited
to, determine the proper medications and treatment course for plaintiff,  immediately change his
medications, and/or discontinue his medications. They moved plaintiff for further evaluation and
only considered changing his treatment order as prescribed, and continued on an improper treatment
course causing plaintiff injury and pain.

112.    His conditions went undiagnosed, untreated, and his symptoms and condition
worsened, causing him pain and injury. MELISSA MONTILEONE, RN and CAITLIN GALLMAN,
RN were deliberately indifferent to plaintiff's medical need because they chose an easier and less
efficacious treatment plan. They had actual and constructive knowledge that a denial/delay of proper
medical care created a risk of permanent injury, would cause needless pain, and they persisted in a
particular course of treatment even though they knew that the treatment was causing pain and was
creating a risk of permanent injury.

113.    On September 17, 2021,the plaintiff  was seen by  CARRIE LUDWIG,

NYSCEF DOC. NO. 1                                                    RECEIVED NYSCEF: 07/05/2022

NP, and RITA GRAZIANO, LPN. It was noted that plaintiff had a rash on his face that seemed to be getting worse. Plaintiff noted that it badly burned. It was noted that he had rashes, abrasions, lacerations, incisions, sores, lesions, scars, callouses, and contusions. The location of the prior mentioned conditions were the bridge of his nose with scabbed areas and serious drainage, and it was noted that his surrounding skin was red and irritated. His cheeks, forehead, and nose was sharply demarcated, and had red, scaly plaques. His plaques were symmetrical with the majority of the irritation noted at his mask line. Plaintiff noted that since the use of his medications it made his skin worse. He noted that his medications caused burning and an increase of his rashes and redness. New topical medications were added. They failed to send him to a medical professional having an expertise in the field of dermatitis and psoriasis outside the confines of the Correctional Facility to, including but not limited to, determine the proper medications and treatment course for plaintiff, immediately change his medications, and/or discontinue his medication. They continued on an improper treatment course causing plaintiff injury and pain.

114.    CARRIE LUDWIG, NP, and RITA GRAZIANO, LPN were deliberately indifferent to plaintiff's medical need because they chose an easier and less efficacious treatment plan. His conditions went undiagnosed, untreated, and his symptoms and condition worsened, causing him pain and injury. They had actual and constructive knowledge that a denial/delay of proper medical care created a risk of permanent injury, would cause needless pain, and they persisted in a particular course of treatment even though they knew that the treatment was causing pain and was creating a risk of permanent injury.

115.    On September 19, 2021, the plaintiff was seen by LYDIA TORRES, RN and CARRIE LUDWIG, NP. Plaintiff noted that he thought he was having an allergic reaction to his new creams. The pain was noted as constant in his facial area. It was noted that he had rashes,

abrasions, lacerations, incisions, sores, lesions, scars, callouses, and contusions. The location of the

prior mentioned conditions was his facial area with red raised with yellow drainage noted near the

bridge of his nose, eyes, and cheeks. Yellow crusty areas was noted on multiple areas of his face.

Plaintiff reported that the affected areas on his face began to burn once he put on the new creams on

his face a few days prior. He noted his face was so irritated that his mask hurt his face. Certain

medications were placed on hold until further evaluation with the facility. He was given Tylenol for

pain. They failed to send him to a medical professional having an expertise in the field of dermatitis

and psoriasis outside the confines of the Correctional Facility to, including but not limited to,

determine the proper medications and treatment course for plaintiff, immediately change his

medications, and/or discontinue his medications. They continued on an improper treatment course

causing plaintiff injury and pain.

116.    LYDIA TORRES, RN and CARRIE LUDWIG, NP were deliberately

indifferent to plaintiff's medical need because they chose an easier and less efficacious treatment

plan. His conditions went undiagnosed, untreated, and his symptoms and condition worsened,

causing him pain and injury. They had actual and constructive knowledge that a denial/delay of

proper medical care created a risk of permanent injury, would cause needless pain, and they persisted

in a particular course of treatment even though they knew that the treatment was causing pain and

was creating a risk of permanent injury.

117.    On September 20, 2021, the plaintiff was seen by DEBRA WESTFIELD,

RN and CARRIE LUDWIG, NP. Plaintiff reported that his face was getting worse, that it was

burning, and that it was getting more red.   It was noted that he had rashes, abrasions, lacerations,

incisions, sores, lesions, scars, callouses, and contusions. The location of the prior mentioned

conditions was facial rash red, raised with patches of dry skin, swelling around his eyes and cheeks,

and that it appeared that his face was irritated along his mask lines. The plaintiff requested to go to the ER. His request was denied. Instead, they started him on a new medications. They failed to send him to a medical professional having an expertise in the field of dermatitis and psoriasis outside the confines of the Correctional Facility to, including but not limited to, determine the proper medications and treatment course for plaintiff, immediately change his medications, and/or discontinue his medications. They continued on an improper treatment course causing plaintiff injury and pain.

118.    DEBRA WESTFIELD, RN and CARRIE LUDWIG, NP were deliberately indifferent to plaintiff's medical need because they chose an easier and less efficacious treatment plan. His conditions went undiagnosed, untreated, and his symptoms and condition worsened, causing him pain and injury. They had actual and constructive knowledge that a denial/delay of proper medical care created a risk of permanent injury, would cause needless pain, and they persisted in a particular course of treatment even though they knew that the treatment was causing pain and was creating a risk of permanent injury.

119.    On September 21, 2021,the plaintiff was seen by CARRIE LUDWIG, NP and DEBRA WESTFIELD, RN. Plaintiff noted that his face was getting worse and that he wanted to go to the hospital. The duration of his pain was noted as 3 days. It was noted that he had rashes, abrasions, lacerations, incisions, sores, lesions, scars, callouses, and contusions. The location of the prior mentioned conditions was a facial rash from under his eyes to his chin, red, raised irritated skin, with yellow exudates noted to his nose and cheeks. Swelling was noted periorbitally. His eyes were noted as watery. Plaintiff requested creams to clear his rash and they were not approved. It was noted that the plaintiff had seborrheic dermatitis/psoarsis. The plaintiff asked to be sent to the ER. They did not send him to the ER or for a consult with a specialist. Instead, they suggested another

treatment course. They failed to send him to a medical professional having an expertise in the field of dermatitis and psoriasis outside the confines of the Correctional Facility to, including but not limited to, determine the proper medications and treatment course for plaintiff, immediately change his medications, and/or discontinue his medications. They continued on an improper treatment course causing plaintiff injury and pain.

120.   CARRIE LUDWIG, NP and DEBRA WESTFIELD, RN were deliberately indifferent to plaintiff's medical need because they chose an easier and less efficacious treatment plan. His conditions went undiagnosed, untreated, and his symptoms and condition worsened, causing him pain and injury. They had actual and constructive knowledge that a denial/delay of proper medical care created a risk of permanent injury, would cause needless pain, and they persisted in a particular course of treatment even though they knew that the treatment was causing pain and was creating a risk of permanent injury.

121.   On September 21, 2021, the plaintiff was seen by DANIELLE WILLIAMS, FMH SPEC II. Plaintiff was agitated and requested to be sent to the hospital. It was decided that the plaintiff should not be sent to the hospital. She failed to send him to a medical professional having an expertise in the field of dermatitis and psoriasis outside the confines of the Correctional Facility to, including but not limited to, determine the proper medications and treatment course for plaintiff, immediately change his medications, and/or discontinue his medications. They continued on an improper treatment course causing plaintiff injury and pain.

122.   DANIELLE WILLIAMS, FMH SPEC II was deliberately was indifferent to plaintiff's medical need because they chose an easier and less efficacious treatment plan. His conditions went undiagnosed, untreated, and his symptoms and condition worsened, causing him pain and injury. She had actual and constructive knowledge that a denial/delay of proper medical

care created a risk of permanent injury, would cause needless pain, and she persisted in a particular course of treatment even though she knew that the treatment was causing pain and was creating a risk of permanent injury.

123.    On September 22, 2021, the plaintiff was seen by CARRIE LUDWIG, NP and JONATHAN FRANCO, LPN. Plaintiff was refusing his medications as he felt they were making his conditions worse and causing him further injury and pain. Plaintiff was simply advised on the importance of medication compliance. They failed to send him to a medical professional having an expertise in the field of dermatitis and psoriasis outside the confines of the Correctional Facility to, including but not limited to, determine the proper medications and treatment course for plaintiff, immediately change his medications, and/or discontinue his medications. They continued on an improper treatment course causing plaintiff injury and pain.

124.    CARRIE LUDWIG, NP and JONATHAN FRANCO, LPN were deliberately indifferent to plaintiff's medical need because they chose an easier and less efficacious treatment plan. His conditions went undiagnosed, untreated, and his symptoms and condition worsened, causing him pain and injury. They had actual and constructive knowledge that a denial/delay of proper medical care created a risk of permanent injury, would cause needless pain, and they persisted in a particular course of treatment even though they knew that the treatment was causing pain and was creating a risk of permanent injury.

125.    On September 25, 2021, the Plaintiff made a sick call request. He stated that he would like to get his eye sight tested. He noted that his eyes were very blurry and that he couldn't seem to read very long before they start watering or become very blurry. He noted that puss from his nose was leaking into his eyes for a few days, that was related to his ongoing and recurring medical issues described herein. On September 25, 2021, in response to plaintiff's sick call, he was seen by

NYSCEF DOC. NO. 1

RECEIVED NYSCEF: 07/05/2022

CAITLIN GALLMAN, RN. It was noted that he had rashes, abrasions, lacerations, incisions, sores, lesions, scars, callouses, and contusions. The location of the prior mentioned conditions was facial skin surrounding his eyes that appeared to have redness with a few formed scabs on his cheeks. A provider sick call was made for further evaluation. They failed to send him to a medical professional having an expertise in the field of dermatitis and psoriasis outside the confines of the Correctional Facility to, including but not limited to, determine the proper medications and treatment course for plaintiff, immediately change his medications, and/or discontinue his medications. They continued on an improper treatment course causing plaintiff injury and pain.

126.    CAITLIN GALLMAN, RN. was deliberately    indifferent to plaintiff's medical need because she chose an easier and less efficacious treatment plan. His conditions went undiagnosed, untreated, and his symptoms and condition worsened, causing him pain and injury. She had actual and constructive knowledge that a denial/delay of proper medical care created a risk of permanent injury, would cause needless pain, and she persisted in a particular course of treatment even though they knew that the treatment was causing pain and was creating a risk of permanent injury.

127.    On September 27, 2021, the plaintiff was seen by CARRIE LUDWIG, NP and RITA GRAZIANO, LPN. Plaintiff noted that he had blurry vision and watery eyes that had persisted for 4 days. It was noted that he had rashes, abrasions, lacerations, incisions, sores, lesions, scars, callouses, contusions. The location of the prior mentioned conditions was a facial rash-red, dry patches to his cheeks, chin, nose surrounding the eyes, and 2 scabbed areas to the bridge of his nose. It was noted that plaintiff had facial rash-seborrheic dermatitis/psoriasis with blurry vision. He was educated on his medication side effects. They failed to send him to a medical professional having an expertise in the field of dermatitis and psoriasis outside the confines of the Correctional

NYSCEF DOC. NO. 1                                                    RECEIVED NYSCEF: 07/05/202:

Facility to, including but not limited to, determine the proper medications and treatment course for plaintiff, immediately change his medications, and/or discontinue his medications. They continued on an improper treatment course causing plaintiff injury and pain.

128.    CARRIE LUDWIG, NP and RITA GRAZIANO, LPN were deliberately was indifferent to plaintiff's medical need because they chose an easier and less efficacious treatment plan. His conditions went undiagnosed, untreated, and his symptoms and condition worsened, causing him pain and injury. They had actual and constructive knowledge that a denial/delay of proper medical care created a risk of permanent injury, would cause needless pain, and they persisted in a particular course of treatment even though they knew that the treatment was causing pain and was creating a risk of permanent injury.

129.    On September 28, 2021, the plaintiff made a sick call request. He noted that his face was swollen and he was in pain. He was seen by LUANN WASHER, RN. She noted that his face was swollen and that his condition was reoccurring. It was noted that he had rashes, abrasions, lacerations, incisions, sores, lesions, scars, callouses, and contusions. The location of the prior mentioned conditions was his surrounding eyes, nose, and that his cheeks noted to be red with dry patches/flaky skin, and scabbing was noted on his side nose and bridge. It was noted that plaintiff had facial rash-seborrheic dermatitis/psoriasis, and blurry vision. It was noted that plaintiff asked that she schedule an appointment with the provider. It was noted that plaintiff needed to keep his hands off of his face, that he should avoid hot water to his face, and stay hydrated. They failed to send him to a medical professional having an expertise in the field of dermatitis and psoriasis outside the confines of the Correctional Facility to, including but not limited to, determine the proper medications and treatment course for plaintiff, immediately change his medications, and/or discontinue his medications. They continued on an improper treatment course causing plaintiff injury

and pain.

130.    LUANN WASHER, RN was deliberately indifferent to plaintiff's medical
need because she chose an easier and less efficacious treatment plan. His conditions went
undiagnosed, untreated, and his symptoms and condition worsened, causing him pain and injury.
She had actual and constructive knowledge that a denial/delay of proper medical care created a risk
of permanent injury, would cause needless pain, and she persisted in a particular course of treatment
even though she knew that the treatment was causing pain and was creating a risk of permanent
injury.

131.    On September 30, 2021, the Plaintiff made a sick call request. He stated he
was seen at a sick call on the 28th, but was never called for a follow up. He noted his face was
swelled up, and his eyes were getting caked up with green puss when he slept. He was seen on
September 30, 2021 and October 1, 2021, by SHANNA THOMPSON, RN, CARRIE LUDWIG,
NP and LUANN WASHER, RN. It was noted he had symptomatic facial concerns. It was noted he
had swelling around his eye and increased crust around his eyes in the morning. It was noted that this
was a recurring problem. It was noted that he had rashes, abrasions, lacerations, incisions, sores,
lesions, scars, callouses, and contusions. The location of the prior mentioned conditions was that his
face was more red with patches of dry scabbed areas on his nose cheeks and about his eye brows,
chin and side of face redness was noted. Plaintiff requested to go back on prior medications. No new
orders for medications were made at that time. It was noted that plaintiff was educated to clean his
face. It was noted if plaintiff still had concerns, and that they would discuss a dermatology consult.
They failed to send him to a medical professional having an expertise in the field of dermatitis and
psoriasis outside the confines of the Correctional Facility to, including but not limited to, determine
the proper medications and treatment course for plaintiff, immediately change his medications,

NYSCEF DOC. NO. 1

RECEIVED NYSCEF: 07/05/2022

and/or discontinue his medications. They continued on an improper treatment course causing plaintiff injury and pain.

132.    SHANNA THOMPSON, RN, CARRIE LUDWIG, NP and LUANN WASHER, RN. were deliberately was indifferent to plaintiff's medical need because they chose an easier and less efficacious treatment plan. His conditions went undiagnosed, untreated, and his symptoms and condition worsened, causing him pain and injury. They had actual and constructive knowledge that a denial/delay of proper medical care created a risk of permanent injury, would cause needless pain, and they persisted in a particular course of treatment even though they knew that the treatment was causing pain and was creating a risk of permanent injury.

133.    On October 3, 2021, the plaintiff made a sick call request. He stated he would like to know if he was scheduled to be seen by a dermatologist. He stated how long does he have to wait and to live in the pain he's been in. He complained that he had an infection in his eyes and that the delay in care was getting ridiculous. On October 5, 2021, the plaintiff was seen by LYDIA TORRES, RN, CYNTHIA CLARK, LPN    CARRIE LUDWIG, NP and CHERYL KACZOROWSKI, MOA. He reported multiple concerns regarding his face. It was noted that he was inquiring regarding when he will be seen by a dermatologist. He noted that his face had not gotten any better. It was noted that he had rashes, abrasions, lacerations, incisions, sores, lesions, scars, callouses, and contusions. The location of the prior mentioned conditions was a facial rash on his forehead, with scattered small raised patches. It was noted that his cheeks, bridges of his nose, and periocular region skin remained red, raised, dry, flaky, had yellow exudates with noted thickness and dry skin. It was note that the bridge of his nose had 4 scabbed areas. Scabbed areas were noted on his bilateral cheeks. His chin was noted to be red, dry, with flaky skin. Plaintiff reported that the skin on his face was tight and burned. He requested a new medication. Additional medication was

NYSCEF DOC. NO. 1

RECEIVED NYSCEF: 07/05/2022

ordered. An outside clinic order was made. They failed to send him to a medical professional having an expertise in the field of dermatitis and psoriasis outside the confines of the Correctional Facility to, including but not limited to, determine the proper medications and treatment course for plaintiff, immediately change his medications, and/or discontinue his medications. They continued on an improper treatment course causing plaintiff injury and pain.

134.    LYDIA TORRES, RN, CYNTHIA CLARK, LPN, CARRIE LUDWIG, NP and CHERYL KACZOROWSKI, MOA were deliberately indifferent to plaintiff's medical need because they had chosen an easier and less efficacious treatment plan. His conditions went undiagnosed, untreated, and his symptoms and condition worsened, causing him pain and injury. They had actual and constructive knowledge that a denial/delay of proper medical care created a risk of permanent injury, would cause needless pain, and they persisted in a particular course of treatment even though they knew that the treatment was causing pain and was creating a risk of permanent injury.

135. On October 6, 2021, a general note was made by CHERYL KACZOROWSKI, MOA. An appointment was made with dermatology for an exacerbation of plaintiff's facial seborrheic dermatitis/psoriasis. She called WNY Dermatology. An appointment wasn't scheduled with WNY Dermatology until November 16, 2021. This delay in a higher level of care created a risk of permanent injury, and caused needless pain and injuries.

136.    On November 16, 2021, plaintiff was seen by an outside specialist at WNY Dermatology. They noted that plaintiff had a rash on his nose. They noted it was blistering, burning, itchy, painful, and red. They noted that it was present for 2 months. He was diagnosed with irritant contact dermatitis, steroid induced rosacea, inflammation, an uncomfortable skin disturbance, including but not limited to erythema. He was instructed to discontinue all topical medications and

NYSCEF DOC. NO. 1

RECEIVED NYSCEF: 07/05/2022

to follow their recommended treatment of care.

## **FAILURE TO TREAT**:

137.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs of this Complaint as if the same were more fully set forth herein.

138.     That upon information and belief, at all times hereinafter mentioned, defendants hired employees, agents, servants and contractors that held themselves out as duly qualified to render proper and adequate medical treatment and services, including providing physical examinations and medical care to those persons under the care and custody of the defendants, including plaintiff.

139.     That upon information and belief, at all times hereinafter mentioned, defendants, through their employees, agents, servants and contractors, failed to render medical evaluation and attention to the plaintiff.

140.     That upon information and belief, at all times hereinafter mentioned, defendants, through their employees, agents, servants and contractors, failed to provide adequate and essential medical evaluation and care and treatment to the plaintiff; they failed to address the plaintiff's serious medical and mental health needs; they acted with deliberate indifference to the plaintiff because he was in need of medical care and they failed, or refused to, obtain such care; they failed to protect him from health problems that were sufficiently imminent and sure or very likely to cause him serious illness and needless suffering.

141.     That by reason of the carelessness, negligence and recklessness and medical malpractice of the defendants through their employees, agents, servants and contractors, in the medical care and treatment and services rendered to and for plaintiff, plaintiff was caused to suffer severe and great bodily injury with accompanying pain and suffering and sustained bodily and

emotional injuries of a permanent nature.

142.    That the policies and procedures, and the willful and wanton conduct of defendants, their agents, servants and employees, reflect a reckless and careless disregard and deliberate indifference for the rights of the plaintiff to receive proper and adequate medical evaluation and attention so as to merit an award of damages against defendants.

143. ·  That the defendants' actions indicate a willful misconduct, wantonness and want of care which have raised the presumption of conscious indifference to the consequences to plaintiff, thus entitling plaintiff to an award of damages.

144.    That the amount of damages sought in this action exceeds the jurisdictional limits of all lower courts that would otherwise have jurisdiction.

## MONELL CLAIM: COUNTY OF ERIE, DEPARTMENT OF SHERIFF OF ERIE COUNTY CORRECTIONAL HEALTH CARE UNIT, SHC SERVICES, INC

145.    At all times hereinafter mentioned, the Defendant COUNTY OF ERIE, DEPARTMENT OF SHERIFF OF ERIE COUNTY CORRECTIONAL HEALTH CARE UNIT, and/or SHC SERVICES, INC had custody care and control over the plaintiff.

146.    The Deprivation of Plaintiff's constitutional rights outlined herein were caused in party by a COUNTY OF ERIE, DEPARTMENT OF SHERIFF OF ERIE COUNTY CORRECTIONAL HEALTH CARE UNIT, and/or SHC SERVICES, INC  governmental custom, policy, and usage. The policy and custom mentioned above is demonstrated through a pattern of similar incidents and inadequate responses to those incidents.

147.    The examples below show  acquiescence by  the COUNTY OF ERIE, DEPARTMENT OF SHERIFF OF ERIE COUNTY CORRECTIONAL HEALTH CARE UNIT, and/or SHC SERVICES, INC in a well settled custom, in other words they knew and should have

NYSCEF DOC. NO. 1                                    RECEIVED NYSCEF: 07/05/2022

known similar unlawful conduct in the past and did not take correct active/respond appropriately to prevent this incident. The COUNTY OF ERIE, DEPARTMENT OF SHERIFF OF ERIE COUNTY CORRECTIONAL HEALTH CARE UNIT, and/or SHC SERVICES, INC knew of the custom and acquiesced in it.

- <u>Flannery v. County of Erie: County of Erie: Index number: 812659/2021 filed in the County of Erie, State of New York on September 14, 2021</u>: Allegations included an inmate at the Erie County Holding Center who died from a ruptured ulcer that resulted form the negligence of defendants, and their failure to provide necessary medial care to Plaintiff;

- <u>Tawana R. Wyatt as Administrator of India T. Cummings: Western District of New York: Case Number: 19-CV-159W(F):</u> On February 21, 2016, India Cummings died at Buffalo General Hospital in Buffalo, New York. She had been brought to the facility on February 17, 2016 from the Erie County Holding Center (ECHC), also in Buffalo, New York, where she had been incarcerated and experiencing declining health for the 16 days prior. In June 2018, the New York State Commission of Correction issued a report concerning the care and treatment provided to Ms. Cummings by the Erie County Sheriff's Office while she was an inmate at ECHC. The report concluded that Ms. Cummings' death was caused by a "massive pulmonary embolism resulting from acute renal failure, rhabdomyolysis, dehydration and fracture of the humerus," stated that the medical and mental health care she received at the jail "was so grossly incompetent and inadequate as to shock

NYSCEF DOC. NO. 1

RECEIVED NYSCEF: 07/05/2022

the conscience," and classified the death as a "homicide due to medical neglect." On October 16, 2018, the Commission of Correction issued a criminal referral to the OAG as authorized under Executive Law § 63(3). This referral requested that the OAG "investigate the alleged commission of any indictable offense or offenses associated with" the death of India Cummings, and "prosecute any person, or persons, believed to have committed the same and any crime or offense arising out of such investigation, prosecution, or both;

- Busch v. Howard, 2021 U.S. Dist. LEXIS 131385 Plaintiff alleges that beginning on August 8, 2019, Plaintiff was in custody and under the supervision of Defendants and housed in the Erie County Holding Center and the Erie County Correctional [*3] Facility. Plaintiff alleged that in 2019, while he was in these facilities, there was a known Hepatitis A outbreak at each of them. According to an October 8, 2019, press release from the Erie County Department of Health, symptoms of Hepatitis A include fatigue, abdominal pain and discomfort, low-grade fever, dark urine, and yellowing of the skin and eyes. The onset of symptoms typically appears between fifteen and fifty days following exposure. During the last two weeks of October 2019, Plaintiff began to complain of symptoms associated with Hepatitis A including fatigue, abdominal pain and discomfort, a fever, dark urine, and yellowing of the skin and eyes. He reported these symptoms to Defendants and alleges that, in response, "[h]e was told that he was dehydrated" and "to

NYSCEF DOC. NO. 1                                                    RECEIVED NYSCEF: 07/05/202

drink water and to take Tylenol." (Doc. 1-1 at 10, ¶ 22.) Following his initial

report of symptoms, his condition worsened. He reported his worsening

symptoms to Defendants and told them he needed to go to the emergency

room. "His request was denied." Id. at 11, ¶ 23. On October 23, 2019,

Plaintiff was hospitalized at the Erie County Medical Center and was

diagnosed with Hepatitis A. Plaintiff remained in the hospital [*4] until

November 1, 2019. He alleges that he unknowingly contracted the virus from

objects, food, or drinks provided by Defendants which were "contaminated

by stool from an infected person[.]" Id. at 11, ¶ 24. During his hospitalization,

Plaintiff was interviewed by a representative from the Erie County

Department of Health who disclosed that the Hepatitis A outbreak was

known to Defendants prior to Plaintiff's reports of symptoms. Plaintiff further

alleges that he sustained "severe and permanent injuries" as a result of

Defendants' negligence and "will continue to incur medical . . . expenses

related to his care, treatment, and attempted cure[.]" Id. at 13, ¶ 31. As a

result of his injuries, he alleges his earning capacity has been impaired,

In Count 1, Plaintiff alleges that while he was incarcerated, Defendants

negligently failed to provide him with adequate medical and mental health

care by, among other things, failing to properly supervise and observe him;

improperly screening and evaluating his risk; allowing untrained employees

to screen inmates for risk of injury; and negligently supervising employees

in the performance of their duties. In Count II, he asserts that Defendants

violated [*5]  42 U.S.C. § 1983 by failing to adequately treat him and by

delaying his medical care and that Defendants County of Erie, Thomas Diina, Sheriff's Department, and Timothy B. Howard, violated 42 U.S.C. § 1983 by negligently hiring, training, supervising, and retaining staff.

Count III asserts respondeat superior and vicarious liability for the tortious conduct of John Does 1-10 and representatives of SHC Services, Inc. against Defendants County of Erie, Thomas Diina, Sheriff's Department, and Timothy B. Howard.2 In Count IV, Plaintiff asserts that Defendants conspired "together with their agents, servants and/or employees . . . to undertake a course of conduct that violated [his] civil rights[.]" Id. at 30, ¶ 96. He requests punitive damages based on Defendants' alleged deliberate indifference and malice toward him.


Girard v. Howard, 2021 U.S. Dist. LEXIS 84143 The First Cause of Action alleges that Defendants were negligent leading to Michael's suicide (id. ¶ 16). Included in this negligence was

• failure to identify Michael's suicide risk,

• failure to place him on suicide watch,

• failure to comply with New York State and federal regulations and a Stipulated Settlement Agreement entered to prevent suicides,

• failure to receive and safely keep Michael,

• failure to properly supervise and monitor him while incarcerated,

• failure to train and/or supervise properly Sheriff's deputies and other Sheriff's Department employees,

• negligent hiring, training, and retention of deputies and staff,

• failure to take steps to prevent Michael from self-harm,

• failure to screen Michael for health or mental health problems,

• failure to enact adequate policies to prevent the death of inmates,

• failure to enact adequate policies to assess, evaluate, supervise, monitor

and/or treat inmates with medical or mental health issues,

• failure to modify Michael's person and quarters to prevent suicide,

• failure to place him in a detoxification unit [*4]  while incarcerated,

• failure to protect him from a reasonably foreseeable injury, including suicide,

• failure to comply with generally recognized industry standards

-   United States of America v. Erie County: Western District of New York:
    Civil No.:09-CV-0849: The Attorney General filed an Amended
    Complaint on behalf of the United States of America pursuant to the Civil
    Rights of Institutionalized Persons Act of 1980 ("CRIPA"), 42 U.S.C. § 1997,
    to enjoin the named Defendants from depriving persons incarcerated at the
    Erie County Holding Center ("ECHC") in Buffalo, New York, and the Erie
    County Correctional Facility ("ECCF") in Alden, New York, of rights,
    privileges, or immunities secured and protected by the Constitution of the
    United States. Defendants have repeatedly failed to provide adequate mental
    health and medical treatment and services to inmates with serious mental
    health and medical needs; inadequate management of medical services
    and treatment, including, but not limited to failures to take necessary steps to

ensure appropriate management of medical care, to

arrange for critically needed care, and respond to clear signs of medical injury,

illness, or harm;

- Freeland v. Erie County, 2022 N.Y. App. Div. LEXIS 2634 This action arises

from the suicide of Trevell Walker (decedent) while he was incarcerated at

the Erie County Holding Center;

- Huber v. Cty. of Erie, 2021 U.S. Dist. LEXIS 155042On January 24, 2018,

Plaintiff Jessica Huber ("Plaintiff"), entered into the custody of Defendants

Erie County ("the County"), and Erie County Sheriff Timothy B. Howard

Plaintiff Jessica Huber ("Plaintiff") commenced this civil rights action

pursuant to 42 U.S.C. § 1983 alleging violations of her Fourteenth

Amendment rights, as well as common law negligence and malpractice

claims against Defendants County of Erie ("the County"), Erie County Sheriff

Timothy B. Howard ("Howard"), Shannon Stevenson ("Stevenson"), Chrissy

Scott ("Scott"), Melissa Muldoon ("Muldoon"), Cally Graham ("Graham"),

Kevin Bugman, RN ("Bugman"), and Kristina Krtanjek, NP ("Krtanjek")

(together, "County Defendants"), as well as psychologist Erin Burch ("Dr.

Burch"), Cynthia Muller, RN ("Muller"), Tom Chapin, PNP ("Chapin"), and

University Psychiatric Practice, Inc. ("UPPI").1 Plaintiff's claims pertain to

an alleged denial of appropriate medical care while in the custody of

Defendant County, including failure to provide Plaintiff with necessary

medications Plaintiff was prescribed for various ailments including depression, bipolar disorder, and anxiety, as well as hypertension, hyperlipidemia, and a seizure disorder, and unreasonable use of force, resulting in physical and psychological harm. All those named as Defendants have been served and appeared in this action through counsel with the exception of Burch, Muller, [*3] and UPPI;

- https://www.wgrz.com/article/news/local/wny-family-seeks-justice-after-s ons-death-at-erie-county-holding-center/71-ee2ea4a3-d14f-46db-8159-502 0254b6917 Mikey Frears died on March 13, 2021 at the Erie County Holding Center and his family says it still isn't clear how he died. They also say they will have to pay for their own toxicology report to learn more about his death.

"My son was a healthy 27-year-old man that entered this facility," said Anna Howard. "I talked to him one time. Erie County Sheriff's Department came to my house Saturday and told me he died from a medical condition. Since then I have had four conflicting stories on how my son has died. Some of police brutality. And it breaks my heart."

- https://ppgbuffalo.org/files/documents/criminal-justice/incarceration/crimi naljustice-_erie_county_holding_center_and_correctional_facility.pdf Inadequate medical care in the Holding Center and the Correctional Facility has been alleged for quite some time. Nan Haynes, an attorney who has

NYSCEF DOC. NO. 1

RECEIVED NYSCEF: 07/05/2022

represented inmates in litigation, believes that the Holding Center is acting with an indifference to minimum basic health care needs.

Michael Bennett, age 28, died after an altercation with six Holding Center officers in 2002. His death was said to be caused by a shoe pressing into his back causing traumatic asphyxia. After the grand jury cleared the actors of criminal liability, the State Commissioner of Corrections released a statement saying that Mr. Bennett might have lived if there was better health screening in the Holding Center. A $1 million settlement was given for the wrongful death of Mr. Bennett in 2008.

Joann Jesse was found hanging in the Holding Center in March of 2008. It was found that she was going through heroin withdrawal and that she had pneumonia in both of her lungs. These medical issues should have sent Ms. Jesse to the hospital.

Michael Roberts threw himself off of a railing. This occurred after he was found not to be a suicide risk;

In 2005, Craig Beatty slipped into a diabetic coma after the Holding Center refused to give him his insulin shots. Mr. Beatty's family is suing Erie County for $250,000;

NYSCEF DOC. NO. 1

RECEIVED NYSCEF: 07/05/2022

In 2007 Joseph Balbuzoski died at ECMC due to complications related to a stroke.

In 2007 Robert J. Henchen died of pneumonia caused by starvation and dehydration.

In 2008, John Reardon committed suicide by hanging himself from a vent in the Holding Center;

- https://www.goerie.com/story/news/crime/2018/08/23/coroner-erie-county-inmate-died/10969552007/

Erie County work-release inmate Felix L. Manus died of natural causes due to complications from asthma, Erie County Coroner Lyell Cook has ruled. The inmate, 48-year-old Felix L. Manus, died June 11, 2018 after suffering an asthma attack during a work-release shift in late May, his family's lawyer has said. The family charges that Erie County corrections officers failed to promptly seek medical care when Manus suffered the asthma attack. The family's lawyer, John Mizner, charged in the lawsuit that the officers delayed calling 911 for emergency medical care when Manus suffered an asthma attack during a May 30 work-release shift near Edinboro. Manus was in the work-release program for failure to pay child support;

NYSCEF DOC. NO. 1

RECEIVED NYSCEF: 07/05/202

- https://theappeal.org/erie-county-jail-deaths-continue/

  On July 31, 2019, Connell Burrell collapsed at the Erie County Holding
  Center in downtown Buffalo, New York. A slightly built 44-year-old man
  with Type 2 diabetes and chronic obstructive pulmonary disease, Burrell had
  served just 12 hours of a 15-day sentence on a disorderly conduct charge
  when he crumpled to the floor. He was eventually transported to Buffalo
  General Medical Center; by the morning of Aug. 2, he was dead.

  Although there has been no official finding in Burrell's death—the New York
  State Commission of Correction is still investigating—he appears to have
  died from medical neglect. His blood sugar spiked before jail employees
  administered a dose of insulin, then it dropped to dangerously low levels. Jail
  medical staff gave him a peanut butter sandwich in an effort to drive his
  blood sugar level back up. But the sandwich, which Burrell was too sick to
  chew or digest properly, impeded attempts by ambulance medics to force air
  into his lungs. A jail nurse was later fired over Burrell's treatment.


- https://theappeal.org/erie-county-jail-deaths-continue/ On average, one person
  dies every six months in Erie County jails. The Erie County Holding Center
  in downtown Buffalo has a 638 person capacity and processes over 20,000
  people each year. The Erie County Correctional Facility in Alden, New York,
  can hold approximately 884 people. Since the appointment and subsequent
  election of Sheriff Timothy Howard in 2005, 30 people have died in the
  county's jails. In 2019, four people died: Joseph Bialaszewski, 29, in July;

NYSCEF DOC. NO. 1                                                                 RECEIVED NYSCEF: 07/05/2022

Burrell in August; Daniel Spicola, 40, in September; and Robert Ingalsbe, 33, in October. Ingalsbe and Spicola appeared to have died by suicide.

- https://spectrumlocalnews.com/nys/buffalo/public-safety/2020/12/18/activ ists-call-for-change-after-27-deaths-at-erie-county-holding-center: Activists are demanding answers after 27 people died at the Erie County Holding center under the administration of Sheriff Tim Howard. During a virtual speak-out held by the Western New York Peace Center, activists, and the Erie County jail division superintendent, discussed how to reform the system.

Families shared stories about their loved ones with medical conditions who they say were neglected at the holding center.

The death of India Cummings was also part of the discussion. The 27-year-old died in 2016 after being in custody for 16 days. The jail is accused of denying her proper medical care. "I just think it's unacceptable. Her life was treated with such little value. And I really would like to get answers," said one activist. "Our goal is to, as a group, change the narrative and enhance services available to the incarcerated population. And while I can't speak on any specific open case, what I can say is we are working towards changing the system," said Thomas Diina, the Erie County Jail Management Division's superintendent. The jail division superintendent discussed several ways he is working to change the system, including enhanced services for mental health care and substance abuse. He says he

NYSCEF DOC. NO. 1                                                    RECEIVED NYSCEF: 07/05/202

wants to see more people getting the treatment they need instead of being put

right into a jail cell;

- http://www.ncianet.org/holding-center-has-most-suicides-in-state/:
  The Holding Center now has the highest suicide rate of any county jail in the

  state, the commission said Monday;

- https://scoc.ny.gov/pdfdocs/Problematic-Jails-Report-2-2018.pdf:
  THE WORST OFFENDERS REPORT: THE MOST PROBLEMATIC

  LOCAL CORRECTIONAL FACILITIES OF NEW YORK STATE:

  Managerial shortcomings of the Erie County Sheriff's Office have

  contributed to numerous serious incidents at the Erie County Holding Center

  and Erie County Correctional Facility, including inmate escapes, assaults, and

  deaths. Consequently, the Commission has previously been required to

  commence enforcement action (i.e., issuance of Directives,

  applications for Supreme Court order) against the Erie County Sheriff for the

  failure to correct identified violations of law and compulsory state

  regulations. Although the Commission will continue to work with the

  Sheriff's Office to correct identified regulatory violations and maintain

  compliance, further enforcement action will be instituted where warranted.

  In 2011 and 2012, Commission staff updated the Position and Staffing

  Analyses at the Erie County Holding Center and Correctional Facility. An

  April 17, 2012 report outlined the daily and total staffing requirements for

NYSCEF DOC. NO. 1

RECEIVED NYSCEF: 07/05/202;

both facilities. Unfortunately, Erie County had failed to maintain required

staffing levels of the Commission's previous staffing analyses. As a result,

Erie County had to hire 72 new Correction Officers and implement a myriad

of in-house promotions to meet the required staffing levels. The Commission

worked with Erie County on a multi-year plan that allowed for the necessary

hires and promotions to meet staffing requirements

INMATE MORTALITY INVESTIGATIONS

ERIE COUNTY HOLDING CENTER

**Individual 14**

DOD: 2012

COD: SUICIDE - HANGING

MOD: SUICIDE

ISSUES: MEDICAL AND MENTAL HEALTH CARE

• Inadequate care by nursing staff who failed to adequately screen Individual

14 for mental health issues and appropriately refer him to mental health as a

priority case.

**Individual 15**

DOD: 2012

COD: HOMICIDE – TRAUMATIC ASPHYXIA

MOD: HOMICIDE

ISSUES: USE OF FORCE, SUPERVISION, MEDICAL AND MENTAL

HEALTH CARE

• Inadequate management plan by Erie County deputies for inmates with

mental illness in an acute crisis state

• Failure of the deputies to allow the responding EMS personnel to adequately assess Individual 15 and assure he was breathing adequately.

• Failure of supervisors to properly supervise a use of force by staff.

• Inadequate mental health care by Erie County MH clinicians who failed to have a management plan for inmates who are in acute crisis state.

• Failure by the Erie County MH clinicians to recognize Individual 15's acute psychosis and immediately refer him to a psychiatric provide

**Individual 16**

DOD: 2014

COD: NATURAL – PERFORATED ULCER

MOD: NATURAL

ISSUES: INADEQUATE MEDICAL CARE

• Erie County nursing staff failed to perform an adequate medical assessment on Individual 16, utilized treatment protocols for suspected cardiac issues on a person with no known cardiac history and then returned him to his housing area without any physician notification or evaluation.

• Erie County jail physician failed to recognize the seriousness of Individual 16's illness and failed to order a hospital evaluation and treatment after the use of a cardiac treatment protocol on a patient with no known cardiac history.

• Erie County medical providers failed to properly review and sign telephone orders.

• Erie County medical providers failed to assure Individual 16's lab work was

completed.

• Erie County medical providers failed to obtain releases for Individual 16's community medical records.

• Erie County medical providers failed to recognize that Individual 16 had continued unresolved complaints of abdominal pain, for over an eight-hour period, with signs of hypoperfusion and failed to immediately seek hospital treatment for him.

**Individual 17**

DOD: 2014

COD: UNKNOWN – AS LISTED

MOD: UNKNOWN

ISSUES: OPEN INVESTIGATION – MULTIPLE MEDICAL MENTAL HEALTH AND MINIMUM STANDARD VIOLATION ISSUES

• Current in-progress investigation by SCOC/MRB. Issues identified to date show serious lapses in both medical and mental health care. Individual 17 languished in a cell for over 10 days in an acute state of psychosis without any crisis psychiatric intervention or attempts to emergently hospitalize. Individual 17 continued to deteriorate with an inability to adequately feed, hydrate, or manage her activities of daily living. She was brought to the hospital in a state of acute renal failure after a suffering a cardiac arrest at the jail. She was resuscitated and brought to the hospital where her condition continued to deteriorate over several days. She was released from custody prior to her death.

**REPORTED SIGNIFICANT FACILITY INCIDENTS**

**Number of reported incidents per category, from 1/1/16-12/26/17**

ERIE COUNTY HOLDING CENTER

Hospital Admission of Inmate 423

Individual Inmate Disturbance 41

Inmate Accidental Injury 22

Inmate Attempted Suicide 10

Release of Hospitalized Inmate From Custody 101

ERIE COUNTY CORRECTIONAL FACILITY

Hospital Admission of Inmate 18

Individual Inmate Disturbance 11

Inmate Accidental Injury 40

Inmate Attempted Suicide 2

Release of Hospitalized Inmate from Custody 2


- https://www.justice.gov/sites/default/files/crt/legacy/2010/12/15/Erie_findl et_redact_07-15-09.pdf Case 1:09-cv-00849-WMS-JJM-filed in the Western District of New York on 9/30/09: United States v. Erie County, et al: A CRIPA investigation of the Erie County Holding Center and Erie County Correctional Facility revealed that:

    - that the County failed to provide adequate medical care, protection from harm, and a safe and sanitary environmental conditions (P. 8-9);

-       that the medical care provided at the Erie County Holding Center and Erie County Correctional Facility fell below the constitutionally required standards of care, that included the lack of on-site health care administrators to manage health care facilities at the facilities (P. 28);

-       that the administration of health care services at Erie County Holding Center and Erie County Correctional Facility was inadequate, as there are no quality improvement programs or monitoring procedures in place to internally assess the quality of health care at the facilities(P. 29)

-       that the Erie County Holding Center and Erie County Correctional Facility procedures and policies fails to provide staff with operational guidance on quality of care (P. 29);

-       that inmates at the Erie County Holding Center and Erie County Correctional Facility suffering from serious medical conditions require continual observation and consistent treatment and care in order to protect them from harm, and noted examples to illustrate that inmates at those facilities are not receiving adequate medical care (P. 31);

-    In December of 2007 and January of 2008, four inmates suffered multiple seizures. At least two of the inmates were told to sleep on the floor, and there is no indication that any of the inmates received medication after being treated at the hospital. One of the four inmates with a seizure history was transferred to the hospital after deputies found him lying unresponsive on the floor. An additional inmate, with a seizure history prior to detention, was found shaking on the floor of her cell and was not immediately sent for medical evaluation (P. 31);

-    In April 2007, Erie County Correctional Facility was cited for providing inadequate dental care to an inmate suffering from pain and a sensitivity to food and liquids. The citizens policy and complaint review counsel found that the ECCF took too long to respond to the inmates request to see a doctor regarding his pain, finding 21 days unreasonably long (P. 31);

-    In March 2007, the Erie County Holding Center nurse, while delivering proscribed medication to an inmate, discovered that the inmate had died due to unknown causes. Earlier in the day, the inmate refused foot and requested that his window be opened. (P. 31);

- It was noted that it appears that the Erie County Correctional Facility and Erie County Holding Center nursing staff who store and administer medication may be untrained in critical areas of security, accountability, common side effects of medications, and documentation of administration of medicines. Alarmingly, the County was made aware of this deficiency through the NYSCC evaluations in 2005 and 2006, as well as a NCCHC 2008 evaluation. (P. 31-32);

- Despite receiving warnings from state oversight agencies as recently as 2008, nursing staff fail to ensure that inmates swallow their medication and fail to check inmate identification prior to administering medication. We reviewed incidents from 2007 in which an inmate attempted suicide by ingesting another inmate psychotropic medication; another inmate hoarded his medication for several weeks before they located it on his shelf; and a third inmate admittedly faked a seizure in order to obtain his prescription medication (P. 32);

- The NYSCC's review found controlled substances placed in a paper bag and stored in the narcotic cabinet after they have been discontinued or when the inmate has been discharged and thst these controlled substances are not counted each shift, in violation of State and Federal Laws (P. 32);

https://www.ada.gov/erie_county/erie_county_sa.htm

SETTLEMENT AGREEMENT BETWEEN

THE UNITED STATES OF AMERICA

AND ERIE COUNTY, NEW YORK

REGARDING THE ERIE COUNTY HOLDING CENTER

AND THE ERIE COUNTY CORRECTIONAL FACILITY

UNDER THE AMERICANS WITH DISABILITIES ACT

DJ # 204-53-125

On December 14, 2010, the United States notified Erie County officials of its

intent to conduct a compliance review of the Erie County Holding Center and

the Erie County Correctional Facility, collectively referred to as the Erie

County Jail, to determine compliance with Title II of the Americans with

Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12131-12134 (Title II), and the

Department's implementing regulation, 28 C.F.R. Part 35.


To provide access to programs, services, and activities for inmates with

disabilities at the Erie County Jail, the Sheriff, consistent with his custodial

role, shall: Ensure that inmates with disabilities are not housed in designated

medical areas unless they are actually receiving medical care or treatment. 28

C.F.R § 35.152(b)(2)(ii).

Immediately provide a shower chair at the Erie County Jail to provide safe and equal access to showering for inmates with disabilities. The shower chair must be capable of being propelled by the user and pushed by an attendant, have a padded seat, a minimum load capacity of 300 pounds, removable or swing clear armrests and foot rests, wheel locks, and be designed with rust or corrosion resistant material designed for use in a shower. The Sheriff will ensure that its staff is trained to provide safe operation of the shower chair with inmates, including assisted transfer, as needed. 28 C.F.R. §§ 35.130, 35.130(b)(7).

Ensure that wheelchairs and other adaptive equipment used by inmates with disabilities at the Erie County Jail are routinely cleaned, repaired, maintained, and generally kept in safe, operable condition. In addition, the Sheriff must provide appropriate devices, as required to meet the needs of inmates with disabilities. 28 C.F.R. §§ 35.130, 35.130(b)(7)

Immediately ensure that when inmates who are deaf or have hearing loss are cuffed or restrained, they are cuffed or restrained in a manner that permits effective communication

The County and the Sheriff shall immediately designate the Executive Director of the Office for the Disabled to be the Disabilities Coordinator with responsibilities for the Erie County Jail. The County and the Sheriff shall provide the Disabilities Coordinator with sufficient authority and resources to perform the tasks required by this Agreement, including coordinating requests for reasonable modifications from inmates with disabilities. 28 C.F.R. § 35.107(a). The Disabilities Coordinator shall maintain records of requests for auxiliary aids and services and the auxiliary aids and services provided with or without a specific inmate request.

148    That said defendants were acting under the color of state law, and their conduct did cause the deprivation of plaintiff's Constitutional rights by failing to provide an environment free from harm; and their conduct caused the Plaintiff's injuries and damages.

149.    The defendants conduct described above deprived the Plaintiff of the following Constitutional rights:

-    their failure to assume any responsibility for the plaintiff's safety and general well being;

-    their failure to provide the plaintiff with reasonably safe conditions of confinement;

-    their failure to provide the plaintiff with adequate medical care in violation of the Eighth and Fourteenth Amendments;

-    their failure to protect the plaintiff from present, continuing, and future harm in violation of the Eighth Amendment and Fourteenth Amendment;

-    their failure to provide the plaintiff with access to adequate medical and mental health care in violation of the Eighth Amendment and Fourteenth Amendments;

-    the defendants had a deliberate indifference to the plaintiff's serious medical needs that constituted an unnecessary and wanton infliction

of pain contrary to contemporary standards of decency in violation of the Eighth Amendment and Fourteenth Amendments;

- in punishing and exposing the plaintiff to conditions and practices not reasonably related to a legitimate governmental objective of safety, order, and security in violation of the Fourteenth Amendment;

- their failure to address the plaintiff's serious medical needs and they acted with deliberate indifference to those needs because the plaintiff was in need of serious medical care and they failed and refused to obtain and provide the plaintiff that care;

- their deliberate indifference to the plaintiff's serious medical needs constituted unnecessary and wanton infliction of pain in violation of the Eighth Amendment and Fourteenth Amendment;

- their failure to protect the plaintiff whose health problems were sufficiently imminent and sure or very likely to cause a serious illness and needless suffering in the next week, month, or year;

- in their protracted failure to provide the plaintiff with safe prison conditions;

- the defendants had knowledge that the plaintiff faced a substantial risk of serious further personal injury, and disregarded that risk by failing to take reasonable measures to abate that harm, and they acted with deliberate indifference to his health and safety; that constituted an unnecessary and wanton infliction of pain proscribed by the Eighth Amendment;

- they violated the plaintiff's right to be free from deliberate indifference to his medical needs;

- in that they delayed the plaintiff's needed medical care to address his fast degenerating conditions that amounted to cruel and unusual punishment;

- the defendants knew and disregarded the excessive risk to the plaintiff's health and safety because they were both aware of the facts from which the inference could be drawn that a substantial risk of harm existed, and they also drew that inference;

- their actions violated the Cruel and Unusual Punishment Clause of the Eighth Amendment.

150.     The defendants had a subjective awareness that their actions would subject the plaintiff to a substantial risk of harm. The medical needs to which the defendants were deliberately indifferent were serious. The defendants' delay in treating the plaintiff's serious medical conditions constituted a deliberate medical indifference. The Plaintiff was harmed from the defendant's delay in his medical care. The defendant's delay/failure to treat the plaintiff's condition resulted in his significant injuries. A reasonable doctor or patient would find the plaintiff's injury worthy of comment and treatment. The plaintiff's conditions also significantly affected his daily activities and he had chronic and substantial pain.

151.     The defendants actions in allowing the deprivation of which he is complaining of was sufficiently serious to constitute cruel and unusual punishment and their actions amounted to a deliberate indifference. The defendant's indifference offended evolving standards of decency in violation of the Eighth Amendment. The plaintiff's  condition might have produced death, and did produce degeneration, and produced extreme pain.

152.     The plaintiff's deprivation is objectively sufficiently serious and resulted in the denial of minimal civilized measure of life's necessities. The plaintiff's incarcerated conditions posed a substantial risk and caused serious harm to the plaintiff. The plaintiff's pain caused by the defendants was an unnecessary and wanton infliction of pain. The defendants had a sufficiently culpable state of mind that was one of deliberate indifference to the plaintiff's health and safety.

153.     The plaintiff's rights that were violated by the defendants were clearly established in a particularized sense so that a reasonable official would know  that the actions described herein violated the plaintiff's rights. The defendants were aware of facts from which an inference could be drawn that a substantial risk of serious harm to the plaintiff existed, and they also drew that inference.

NYSCEF DOC. NO. 1                                                    RECEIVED NYSCEF: 07/05/202

154.    The deprivation of the plaintiff's rights resulted from deliberate decisions of the defendants. Their conduct was reckless and grossly negligent.

155.    The conduct complained of by the plaintiff was undertaken pursuant to an official policy and a governmental custom. The above mentioned customs and practices caused the plaintiff to be subjected to the denial of his constitutional rights.

156.    The defendants' policies, customs, and practices of described above were the proximate causes of the violation of the plaintiff's rights herein pursuant to the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution, in addition to 42 U.S.C. Section 1983.

157.    Upon information and belief, overlooking, excusing, or disregarding the wrongful conduct of the defendants herein, have adopted a rule or unwritten rule, or defendants have established a policy or custom of deliberate indifference to unlawful conduct as complained of herein.

158.    The defendants' failure to take measures to train and supervise its correctional staff was a proximate cause of the violations alleged in the complaint herein.

159.    That all enumerated defendants were acting under color and authority of the Law, and were acting in a capacity as agents, servants and employees of defendants.

160.    That the entire course of conduct of defendants as enumerated above was in violation and deprived the plaintiff of his federally secured Constitutional rights and the rights contours were sufficiently definite that any reasonable official in the defendants shoes would have understood that they violated it.

161.    That as a result of the foregoing, the plaintiff has sustained general and special damages in an amount that exceeds the jurisdictional limits of all lower courts that would otherwise have jurisdiction.

162.    That the plaintiff is entitled to an award of attorneys fees for the prosecution of the within action.

### C. AS AND FOR A SEPARATE AND DISTINCT CAUSES OF ACTION AGAINST ALL DEFENDANTS, PLAINTIFF ALLEGES UPON INFORMATION AND BELIEF:

### CONSPIRACY:

163.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs of this Complaint as if the same were more fully set forth herein.

164.    That defendants, together with their agents, servants and/or employees acted within their capacities and of their color of law, having conspired together and with others, reached a mutual understanding and acted to undertake a course of conduct that violated the plaintiff's civil rights as outlined above.

165.    As a direct and proximate cause of the result of the conspiracy between the defendants and others as aforesaid, plaintiff was deprived of his constitutional rights as outlined herein.

166.    Upon information and belief, the amount of damages sought by the plaintiff against the defendants in this action exceed the jurisdictional limits of all lower courts which would otherwise have jurisdiction, and the plaintiff seeks damages against the defendants in an amount to be proven and determined at the trial of this action.

## DEMAND FOR PUNITIVE DAMAGES

167.    The actions of the defendants herein were extreme and outrageous, and shock the conscience of a reasonable person. Consequently, an award of punitive damages is appropriate to punish the defendants for their deliberate indifference and malice towards the plaintiff and his rights as outlined above.

168.    As such, plaintiff demands judgment against defendants in an amount to be determined at trial.

*WHEREFORE*, the plaintiff respectfully the following forms of relief:

A)    Compensatory and special damages against the defendants and each of them jointly and severally, in an amount to be determined at trial;

B)    Punitive Damages against all individual defendants in an amount to be determined by a properly instructed jury;

C)    Costs, disbursements, and attorneys' fees as stated above;

D)    Interest on the aforementioned judgments; and

E)    Such other and further relief that the Court deems just and proper.

Dated:    July 5, 2022
Hamburg, New York

SHAW & SHAW P.C.

Blake Zaccagnino
Attorneys for Plaintiff
4819 South Park Avenue
Hamburg, New York 14075
(716) 648-3020 Telephone
(716) 648-3730 Fax

PLEASE FORWARD THIS
LEGAL DOCUMENT TO YOUR
LIABILITY INSURANCE
CARRIER AND/OR ATTORNEY
IMMEDIATELY

STATE OF NEW YORK
SUPREME COURT : COUNTY OF ERIE

_____

RAYMOND ACKER

                              Plaintiff,

        -vs-

                                                          Index No. 807571/2022

COUNTY OF ERIE, et al.

                              Defendants.

_____

## NOTICE OF ELECTRONIC FILING

**You have received this Notice because:**

- The Plaintiff/Petitioner, whose name is listed above, has filed this case using the New York State Courts e-filing system, and
- You are a Defendant/Respondent (a party) in this case. (CPLR § 2111, Uniform Rule § 202.5-bb)

**If you are represented by an attorney**: give this Notice to your Attorney, along with its attachments.  (Attorneys: see "Information for Attorneys" on page 2)

**If you are not represented by an attorney: you are not required to e-file.  You may serve and file documents in paper form and you must be served with documents in paper form.  However, as a party without an attorney, you may participate in e-filing.**

### Benefits of E-Filing

You can:

- serve and file your documents electronically
- view your case file on-line
- limit your number of trips to the courthouse
- pay any court fees on-line.

There are no additional fees to e-file, view, or print your case records.

To sign up for e-filing or for more information about how e-filing works, you may:

- visit: www.nycourts.gov/efile-unrepresented, or
- go to the Help Center or Clerk's Office at the court where the case was filed.  To find legal information to help you represent yourself visit www.nycourthelp.gov.

## **Information for Attorneys**

An attorney representing a party who is served with this Notice must either:

1)   immediately record his or her representation within the e-filed matter on the NYSCEF site https://iapps.courts.state.ny.us/nyscef/HomePage: or

2)   file the Notice of Opt-Out form with the clerk of the court where this action is pending.  Exceptions from mandatory e-filing are limited to attorneys who certify in good faith that they lack the computer hardware and/or scanner and/or internet connection or that they lack (along with all employees subject to their direction) the operational knowledge to comply with e-filing requirements. [Section 202.5-bb(e)]

For additional information about electronic filing and to create a NYSCEF account, visit the NYSCEF website at www.nycourts.gov/efile or contact the NYSCEF Resource Center (phone: 646-386-3033; e-mail: efile@nycourts.gov)

Dated:          July 8, 2022

SHAW & SHAW, P.C.
Blake J. Zaccagnino, Esq., of counsel
Attorneys for Plaintiff
Office and Post Office Address
4819 South Park Avenue
Hamburg, NY 14075
(716) 648-3020 Telephone
(716) 648-3730 Fax
bzaccagnino@shawlawpc.com

# EXHIBIT B

FILED: ERIE COUNTY CLERK 07/15/2022 12:26 PM

NYSCEF DOC. NO. 18

INDEX NO. 807571/2022

RECEIVED NYSCEF: 07/15/2022

**STATE OF NEW YORK**
**SUPREME COURT : COUNTY OF ERIE**

RAYMOND ACKER

          Plaintiff,

vs.

COUNTY OF ERIE
TIMOTHY B. HOWARD, ERIE COUNTY SHERIFF,
THOMAS DIINA, as Superintendent of the
Jail Management Division Erie County Sheriff's Department,
MELISSA MONTILEONE, RN,
CAITLIN GALLMAN, RN,
CARRIE LUDWIG, NP
RITA GRAZIANO, LPN,
LYDIA TORRES, RN,
DEBRA WESTFIELD, RN,
DANIELLE WILLIAMS, FMH SPEC II,
JONATHAN FRANCO, LPN,
SHANNA THOMPSON, RN,
LUANN WASHER, RN,
CYNTHIA CLARK, LPN,
CHERYL KACZOROWSKI, MOA,
DEPARTMENT OF THE SHERIFF OF ERIE COUNTY
CORRECTIONAL HEALTH CARE UNIT,
SHC SERVICES, INC., and
JOHN DOES 1-10.
          Defendants.

> **ANSWER WITH CROSS-CLAIM**
> **Index No. 807571/2022**

> TRIAL BY JURY DEMANDED

    The Defendants, COUNTY OF ERIE, TIMOTHY B. HOWARD, ERIE COUNTY

SHERIFF, THOMAS DIINA, as Superintendent of the Jail Management Division Erie County

Sheriff's Department, MELISSA MONTILEONE, RN, CAITLIN GALLMAN, RN, CARRIE

LUDWIG, NP, RITA GRAZIANO, LPN, LYDIA TORRES, RN, DEBRA WESTFIELD,

RN,DANIELLE WILLIAMS, FMH SPEC II, JONATHAN FRANCO, LPN, SHANNA

FILED: ERIE COUNTY CLERK 07/15/2022 12:26 PM

NYSCEF DOC. NO. 18

INDEX NO. 807571/2022

RECEIVED NYSCEF: 07/15/2022

THOMPSON, RN, LUANN WASHER, RN, CYNTHIA CLARK, LPN,CHERYL

KACZOROWSKI, MOA, DEPARTMENT OF THE SHERIFF OF ERIE COUNTY

CORRECTIONAL HEALTH CARE UNIT, by and through their attorney, JEREMY C. TOTH,

ESQ., ACTING ERIE COUNTY ATTORNEY, by ANTHONY B. TARGIA, ESQ., Assistant County

Attorney, of counsel answer the Complaint herein as set forth below:

1.      Admit the allegations contained in paragraph(s) numbered 100.

2.      Deny each and every allegation contained in paragraph(s) numbered 1, 7, 8, 9, 10, 11,

12, 13, 14, 15, 16, 17, 18, 19, 31, 32, 33, 34, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51,

52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 65, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 79, 80, 81,

82, 83, 84, 85, 86, 88, 89, 90, 91, 92, 93, 95, 96, 97, 98, 99, 104, 105, 106, 107, 108, 109, 110,

111, 112, 113, 114, 115, 116, 117, 118, 119, 120, 121, 122, 123, 124, 125, 126, 127, 128, 128,

130, 131, 132, 133, 134, 135, 137, 139, 140, 141, 142, 143, 144, 145, 146, 147, 148, 149, 150,

151, 152, 153, 154, 155, 156, 157, 158, 159, 160, 161, 162, 163, 164, 165, 166, 167, and 168 of

the plaintiff's complaint.

3.      Deny knowledge or information sufficient to form a belief with regards to the

allegations in paragraphs 3, 5, 6, 21, 22, 27, 28, 35, 36, 37, 63, 101, 103, 136, and 138 of the

plaintiff's complaint.

4.      Neither admit nor deny the allegations contained within paragraph(s) numbered 2, 4,

20, 23, 24, 26, 29, 30, 64, 66, 78, 87, and 94 of the plaintiff's complaint in that same call for

legal conclusions.  To the extent that these allegations do not call for legal conclusions, the

answering defendants deny knowledge or information as to same.

5.      Deny knowledge or information as to any allegations not heretofore addressed.

FILED: ERIE COUNTY CLERK 07/15/2022 12:26 PM

NYSCEF DOC. NO. 18

INDEX NO. 807571/2022

RECEIVED NYSCEF: 07/15/2022

## AS AND FOR A FIRST DEFENSE THE DEFENDANTS ALLEGE :

6.      Upon information and belief, plaintiff's Complaint wholly fails to state a claim upon which relief may be granted.

## AS AND FOR A SECOND DEFENSE THE DEFENDANTS ALLEGE :

7.      Plaintiff has failed to comply with the mandatory notice of claim requirements of New York State General Municipal Law as are applicable to any possible pendent State claims asserted in plaintiff's Complaint. Therefore, any pendent State claims asserted in plaintiff's Complaint must be dismissed.

## AS AND FOR A THIRD DEFENSE THE DEFENDANTS ALLEGE :

8.      The plaintiff may not recover punitive damages or exemplary damages against the defendants herein.

## AS AND FOR A FOURTH DEFENSE THE DEFENDANTS ALLEGE :

9.      The defendants are immune in the instant suit from any liability to plaintiff for damages, since the said defendants acted towards plaintiff in good faith and with an objectively reasonable belief that their actions were lawful and not in violation of any of plaintiff's clearly established constitutional rights. Consequently, plaintiff's claims must be dismissed.

## AS AND FOR A FIFTH DEFENSE THE DEFENDANTS ALLEGE :

10.      Upon information and belief, plaintiff's causes of action in the Complaint are barred by the applicable Statutes of Limitation and/or applicable filing deadlines.

## AS AND FOR A SIXTH DEFENSE THE DEFENDANTS ALLEGE :

11.      The injuries and/or damages alleged in plaintiff's Complaint were caused or were contributed to, in whole or in part, by the culpable conduct, want of care, and/or assumption of

FILED: ERIE COUNTY CLERK 07/15/2022 12:26 PM
NYSCEF DOC. NO. 18

INDEX NO. 807571/2022
RECEIVED NYSCEF: 07/15/2022

risk on the part of the plaintiff and without any negligence, fault, or want of care on the part of the defendants.

### AS AND FOR A SEVENTH DEFENSE THE DEFENDANTS ALLEGE :

12.     Lack of personal jurisdiction and lack of service of process.

### AS AND FOR A EIGHTH DEFENSE THE DEFENDANTS ALLEGE :

13.     Upon information and belief, all or some of the Plaintiff's economic loss has been or with reasonable certainty will be replaced or indemnified by collateral sources, and, to the full extent of such replacement or indemnification, these answering defendants request and demand that any judgment, award or verdict obtained by the Plaintiff be reduced accordingly, as provided for by § 4545 of the New York Civil Practice Law and Rules.

### AS AND FOR A NINTH DEFENSE THE DEFENDANTS ALLEGE :

14.     The Defendants cannot be held vicariously liable to the Plaintiff and that further, there can be no respondeat superior liability in the context of a Title 42 U.S.C. § 1983 claim.

### AS AND FOR A TENTH DEFENSE THE DEFENDANTS ALLEGE :

15.     The actions of the Defendants herein constitute discretionary acts which render the Defendants immune from liability to the Plaintiff under a theory of quasi-judicial immunity.

### AS AND FOR A ELEVENTH DEFENSE THE DEFENDANTS ALLEGE :

16.     No special duty or special relationship existed as between the Plaintiff and the defendants herein.  The "public duty" rule, sometimes alternatively referred to as the "governmental function immunity" doctrine, constitutes a complete bar to the Plaintiff's action as against the Defendants.

### AS AND FOR A TWELVTH DEFENSE THE DEFENDANTS ALLEGE :

17.     The Plaintiff has failed to mitigate damages herein.

FILED: ERIE COUNTY CLERK 07/15/2022 12:26 PM

NYSCEF DOC. NO. 18

INDEX NO. 807571/2022

RECEIVED NYSCEF: 07/15/2022

## AS AND FOR A THIRTEENTH DEFENSE THE DEFENDANTS ALLEGE :

18.    The Plaintiff failed to exhaust all administrative remedies pursuant to the Prisoner

Litigation Reform Act 42 U.S.C. Section 1997e(a).

## AS AND FOR A FOURTEENTH DEFENSE THE DEFENDANTS ALLEGE :

19.    The Plaintiff does not satisfy the necessary 8th or 14th Amendment legal analysis

required to present a valid claim.

## AS AND FOR A FIFTEENTH DEFENSE THE DEFENDANTS ALLEGE :

20.    The Plaintiff at all times received proper and adequate medical treatment and

services.

## AS AND FOR A SIXTEENTH DEFENSE THE DEFENDANTS ALLEGE :

21.    The COUNTY OF ERIE does not create policy relative to pre-trial detainees, or those

serving a prison term or anything with regard to the operations of the jails under the sole control

of the Sheriff of Erie County.

## AS AND FOR A SEVENTEENTH DEFENSE THE DEFENDANTS ALLEGE :

22.    There is no vicarious liability between the COUNTY OF ERIE and the Sherriff of

Erie County. Further, there is no vicarious liability between those employed by the Sheriff with

either the Sheriff of Erie County or the COUNTY OF ERIE.

## AS AND FOR A EIGHTTEENTH DEFENSE THE DEFENDANTS ALLEGE :

23.    That he DEPARTMENT OF THE SHERIFF OF ERIE COUNTY CORRECTIONAL

HEALTH CARE UNIT is a non-jural entity lacking the capacity to sue or be sued.

## AS AND FOR A NINETEENTH DEFENSE THE DEFENDANTS ALLEGE :

FILED: ERIE COUNTY CLERK 07/15/2022 12:26 PM

NYSCEF DOC. NO. 18

INDEX NO. 807571/2022

RECEIVED NYSCEF: 07/15/2022

24. That in the context of Title 42 U.S.C § 1983, all claims made against individuals in their "official" capacities must fail.

### AS AND FOR A TWENTIETH DEFENSE THE DEFENDANTS ALLEGE :

25. That in the context of Title 42 U.S.C § 1983, all negligence claims must fail.

### AS AND FOR A TWENTY FIRST DEFENSE THE DEFENDANTS ALLEGE :

26. That each and every defendant does not owe a duty to the plaintiff with respect to the same standard of care as would be required of a medical doctor. The defendants do not possess the authority to diagnose physical medical conditions or disease and prescribe treatment regimens for physical medical conditions or diseases.

### AS AND FOR A TWENTY SECOND  DEFENSE
### THE DEFENDANTS ALLEGE :

27.     That forensic mental health professionals do not diagnose or prescribe treatment regimens for physical medical conditions and accordingly do not owe a duty of care to Plaintiff with regard to physical medical conditions.

### AS AND FOR A SEPARATE DEFENSE AND BY WAY OF A CROSS-CLAIM
### AGAINST THE CO-DEFENDANT SHC SERVICES, INC., THE DEFENDANTS
### ALLEGE UPON INFORMATION AND BELIEF :

28.     That these answering defendants are not aware of any culpable conduct on the part of the co-defendant(s), but in the event that it is determined that there is culpable conduct, the Court is asked to apply Article 14 of the CPLR.

29.     That if these answering Defendants are found liable to the Plaintiff, they will be entitled to indemnification or contribution or both by and judgment against the remaining co-

FILED: ERIE COUNTY CLERK 07/15/2022 12:26 PM

NYSCEF DOC. NO. 18

INDEX NO. 807571/2022

RECEIVED NYSCEF: 07/15/2022

defendant(s), for the full amount of said liability or for such proportionate share as represents the amount, degree or kind of negligence attributable to such co-defendants.

30.    That these answering Defendants are entitled to contractual / common law defense and indemnification or contribution or both by and judgment against the remaining co-defendant(s), for the full amount of said liability or for such proportionate share as represents the amount, degree or kind of negligence attributable to such co-defendants.

31.    These Answering Defendants reserve the right to assert additional defenses throughout this litigation as discovery progresses.

## JURY DEMAND

A trial by jury is hereby demanded.

**WHEREFORE**, the defendants requests that:

(A)    Each count, claim, and cause of action in plaintiff's Complaint be dismissed; and for

(B)    Such other and further relief as this Court deems just and proper under the circumstances.

DATED:       July 14, 2022
             Buffalo, New York

Yours, etc.

JEREMY C. TOTH, ESQ.
Acting Erie County Attorney
and Attorney for Defendants

By: ANTHONY B. TARGIA, ESQ.
Assistant County Attorney, of Counsel
95 Franklin Street, Suite 1634
Buffalo, New York, 14202
(716) 858-2200